PHILLIP RIZZO, Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE VILLAGE OF EVERGREEN PARK POLICE PENSION FUND, Defendant-Appellant.

First District (4th Division) No. 1—02—0747

Opinion filed April 17, 2003.

Richard J. Puchalski and Richard Reimer, both of Sklodowski, Puchalski & Reimer, of Chicago, for appellant.

Stanley H. Jakala, of Berwyn, for appellee.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Phillip Rizzo, sought administrative relief from a decision of defendant, the Board of Trustees of the Village of Evergreen Park Police Pension Fund (the Board), denying his application for a disability pension under the Illinois Pension Code (40 ILCS 5/3—101 *et seq.* (West 1996)) (the Code). The trial court reversed the Board's decision and the Board now appeals from that judgment. The issues presented for review are whether the Board correctly interpreted and applied section 3—115 of the Code and whether the trial court erred in finding that the Board's decision denying Rizzo's application for a disability pension was against the manifest weight of the evidence. We reverse the trial court's decision and affirm the Board's ruling.

Rizzo became a police officer with the Village of Evergreen Park on December 1, 1986. On October 17, 1994, Rizzo injured his right ankle in the police station parking lot while entering the station when he stepped into a hole, causing his foot to roll over and making him fall. Rizzo underwent surgery on his ankle in May 1995. He returned to the police department on July 19, 1996, in a light-duty position and was ordered by the police chief to return to full duty on August 15, 1996. On August 14, 1996, Rizzo filed an application for a line-of-duty disability pension pursuant to section 3—114.1. 40 ILCS 5/3—114.1 (West 1996). He did not return to full duty.

The Board held hearings on Rizzo's application in June 1997 and June 2000. At the hearings, two of the three physicians selected by the Board, Dr. William Malik and Dr. Herbert Loseff, submitted reports finding that Rizzo was disabled and unable to return to his job as an

Evergreen Park police officer. The third physician, Dr. James Ryan, found that while Rizzo was impaired, he was not disabled and could return to full, unrestricted police duties. Only Ryan and Loseff submitted sworn certificates as to their opinions. Additionally, the deposition transcripts of Dr. Ryan, Dr. Malik, Dr. Charles Mercier, and Dr. Michael Pinzur were admitted along with Dr. Barry Fischer's and Dr. S.I. Yen's reports and various medical records. In his June 25, 1996, and January 30, 1997, reports, Dr. Mercier stated that Rizzo did not have a permanent disability and he could return to work without restrictions. However, in his deposition, Dr. Mercier stated both that Rizzo was disabled and that he was able to return to work.

Dr. Pinzur, Rizzo's treating physician, testified that Rizzo was permanently disabled and was not able to return to his police duties. Dr. Yen stated that as of October 23, 1995, Rizzo was not able to return to work and would need several months to recover from surgery. In his April 1999 report, Dr. Fischer stated that Rizzo sustained injuries resulting in a disability which precluded him from returning to his previous work activities as a police officer. Rizzo also testified before the Board.

In its decision dated October 13, 2000, the Board made the following findings of fact. Rizzo testified that he was not discharged by Dr. Pinzur, but he had not seen him in years. Rizzo currently worked as an "HVAC" service technician, repairing, installing and servicing furnaces, heating units and air-conditioning systems. This line of work required him to load and unload furnaces, heating and air-conditioning equipment. Rizzo had been employed in his current position since November 1998 with no apparent problems and did not lose any time because of his ankle injury. Following his surgery, Rizzo had no problems riding his motorcycle. The medical evidence presented in this case and the deposition testimony of the physicians were in conflict as to what, if any, medical problems Rizzo had and whether he was disabled.

Dr. Ryan examined Rizzo on behalf of the Board and submitted a physician's certificate that Rizzo was not disabled. The Board quoted from Dr. Ryan's report, where he stated that at the time of his examination, Rizzo had

"no disability. The original injury was most probably a strain, which did not produce any instability. No disability was caused by the alleged on duty injury of October 17, 1994. His explanation is consistent with the injury he sustained. He needs no further medical care and he is certainly not a surgical candidate. He can return to full, unrestricted police duties."

The Board further found that three doctors selected by the Board had

not certified that Rizzo was disabled for service in the police department.

In its analysis, the Board noted the conflict in medical evidence as to whether Rizzo was disabled, but after a careful review, it afforded more weight to Dr. Ryan's opinion that Rizzo was not disabled. The Board further found that Dr. Ryan's report was consistent with Rizzo's testimony that he rode his motorcycle after his ankle surgery and worked as an "HVAC" technician with no apparent problems. Secondly, the Board denied Rizzo's application for benefits pursuant to section 3—115. 40 ILCS 5/3—115 (West 1996). Under that section, three physicians selected by the Board must certify that the applicant was disabled in order to qualify for a disability pension. Dr. Ryan, one of the Board's selected doctors, certified that Rizzo was not disabled, and thus, a disability pension could not be granted. As an alternative holding, the Board found that even if Rizzo was found to be disabled, he would only be entitled to a nonduty pension because he was not performing an act of police service at the time of his injury.

Rizzo then filed a complaint for administrative review in the trial court. After a hearing in July 2001, the trial court reversed and remanded the case to the Board because Dr. Malik had not submitted a sworn physician's certificate, as was required under section 3—115. On remand, the Board noted that it had received Dr. Malik's certificate wherein he certified that Rizzo was disabled. The Board adopted its previous decision and order and again denied Rizzo's application, finding that he was not disabled. Rizzo filed another complaint for administrative review, maintaining that he was entitled solely to a nonduty pension. The trial court reversed the Board's decision, contending that the Board improperly interpreted section 3—115 and its decision was against the manifest weight of the evidence. The Board then filed this timely appeal.

The Board first argues that it correctly interpreted section 3—115 of the Code when denying Rizzo's application for disability benefits. It contends that section 3—115 mandates that before a disability pension can be granted, all three examining physicians selected by the Board must certify that the applicant is disabled. Because only two of the Board's selected physicians certified Rizzo as disabled in this case, Rizzo cannot receive a disability pension. Rizzo disagrees with the Board's interpretation and responds that while the Board must have three certificates from its selected doctors, all three certificates do not need to find the applicant disabled in order to award a disability pension. Therefore, Rizzo argues, even though one doctor certified that he was not disabled, Rizzo could still obtain a pension.

In a reviewing a final decision under the Administrative

Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)), we review the agency's decision and not the trial court's determination. *Martino v. Police Pension Board*, 331 Ill. App. 3d 975, 979, 772 N.E.2d 289, 293 (2002). When the issue is one of law only, we review the agency's decision *de novo. Martino*, 331 Ill. App. 3d at 980, 772 N.E.2d at 293. This case involves a question of statutory interpretation, which we also review *de novo. Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249, 254 (2002). However, we give substantial weight and deference to an agency's interpretation of a statute it enforces. *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 1001, 638 N.E.2d 1144, 1146 (1994). In interpreting a statute, the court must ascertain the legislature's intent, which is found in the plain and ordinary meaning of the language used in the statute. *Land*, 202 Ill. 2d at 421, 781 N.E.2d at 254. Where the statutory language is clear, the court will give that language effect without resort to other aids of construction. *Martino*, 331 Ill. App. 3d at 980, 772 N.E.2d at 294.

■ Section 3—115 provides in relevant part:

"A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, or by a representative if the officer is under legal disability, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability." 40 ILCS 5/3—115 (West 1996).

The plain and clear language of the statute requires that a police officer cannot obtain a disability pension unless the Board receives certificates stating that the officer is disabled from three practicing physicians who were selected by the Board. Additionally, the Board may require "other evidence" of his disability or evidence in addition to the three certified statements from the Board's selected physicians that the applicant is disabled. However, Rizzo cites *Caauwe v. Police Pension Board*, 184 Ill. App. 3d 482, 540 N.E.2d 453 (1989), for the proposition that physician's certificates are required by three doctors to establish either the applicant's disability or lack thereof.

In *Caauwe*, the Board denied disability benefits based on unverified and unsworn medical evidence. The appellate court reversed and remanded because the doctors failed to certify the applicant's disability or lack thereof, holding that section 3—115 mandated the Board to select three practicing physicians and required them to furnish the Board with subscribed and sworn-to certifications of the applicant's disability. *Caauwe*, 184 Ill. App. 3d at 486, 540 N.E.2d at 455-56.

■ Under the clear language of section 3—115, certification of an

officer's disability is only required where the Board will be providing benefits to an applicant, not when it is going to deny benefits. *Daily v. Board of Trustees of the Police Pension Fund*, 251 Ill. App. 3d 119, 127, 621 N.E.2d 986, 991 (1993). "To the extent *Caauwe* mandates certification of an applicant's disability prior to denying benefits, we find it is in express contradiction of the language of the statute and decline to follow it." *Daily*, 251 Ill. App. 3d at 127, 621 N.E.2d at 991. We agree with *Daily* and decline to follow *Caauwe*.

■ In the present case, one of the three physicians selected by the Board to examine Rizzo, Dr. Ryan, did not certify that he had a disability. Based on section 3—115, without such certification, the Board could not award Rizzo a disability pension. Thus, we find that the Board correctly interpreted section 3—115 and properly denied Rizzo's application for disability pension benefits.

On administrative review, this court may affirm an agency's decision on any ground appearing in the record. *Rainbow Apartments v. Property Tax Appeal Board*, 326 Ill. App. 3d 1105, 1109, 762 N.E.2d 534, 537 (2001). Because we affirm the Board's decision based on the application of section 3—115, we need not address the Board's other argument that the trial court's decision to reverse the Board's determination was against the manifest weight of the evidence.

For the foregoing reasons, we reverse the judgment of the trial court and affirm the Board's decision to deny Rizzo disability pension benefits.

Circuit court reversed; pension board affirmed.

HARTMAN and KARNEZIS, JJ., concur.