LAWRENCE WADE, Plaintiff-Appellant, v. THE CITY OF NORTH CHICAGO POLICE PENSION BOARD, Defendant-Appellee.

Second District   No. 2—04—0047

Opinion filed December 3, 2004.

BOWMAN, J., dissenting.

Bernard Wysocki, of Wysocki & Smith, of Waukegan, for appellant.

Richard J. Reimer, Thomas S. Radja, Jr., and Chris W. Potthoff, all of Richard J. Reimer & Associates, L.L.C., of Hinsdale, and Richard J. Puchalski, of Law Office of Richard J. Puchalski, of Chicago, for appellee.

Stanley H. Jakala, of Berwyn, for *amicus curiae.*

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Lawrence Wade, appeals the order of the circuit court of Lake County affirming the decision of defendant, the City of North Chicago Police Pension Board (the Board), denying him a disability pension. The Board denied plaintiff a line-of-duty disability pension (see 40 ILCS 5/3—114.1 (West 2002)), in part because Dr. Milgram, one of the three doctors selected by the Board to examine plaintiff, did not certify plaintiff as disabled pursuant to section 3—115 of the Illinois Pension Code (Code) (40 ILCS 5/3—115 (West 2002)). On appeal, plaintiff argues: (1) the Board denied him a fair and impartial hearing because it relied solely on Dr. Milgram's medical report in denying him a disability pension; (2) the Board's decision was contrary to the manifest weight of the evidence; and (3) the Board improperly interpreted section 3—115 to mandate that, before a disability pension can be granted, all three examining physicians selected by the Board must certify that the applicant is disabled. We find that the Board cor-

rectly interpreted section 3—115 and properly denied plaintiff's application for disability pension benefits. Accordingly, we affirm the Board's decision on this basis.

## FACTS

Plaintiff was hired as a full-time police officer by the North Chicago police department in June 1982. In 1989, plaintiff injured his right knee playing football. Dr. Roger B. Collins examined him in 1991 and again in 1992, when his knee problems continued. In August 1997, he twisted his right knee playing softball and underwent arthroscopic surgery. His knee problems continued and, in late 2001 and early 2002, he missed work for approximately eight weeks because of them. He returned to work in February 2002.

On April 20, 2002, plaintiff injured the same knee when he tumbled down an embankment while escorting a prisoner. He underwent surgery on May 17, 2002. Thereafter, on October 8, 2002, plaintiff filed an application with the Board for a disability pension. He did not specify whether he was seeking a line-of-duty (see 40 ILCS 5/3—114.1 (West 2000)) or a not-on-duty disability pension under the Code (see 40 ILCS 5/3—114.2 (West 2000)).

Pursuant to statutory mandate (see 40 ILCS 5/3—115 (West 2000)), three physicians selected by the Board, Dr. John Dwyer, Dr. Christopher Reger, and Dr. James W. Milgram, examined plaintiff. Drs. Dwyer and Reger found plaintiff to be disabled from a "work-related" injury and issued certificates of disability. Dr. Milgram found that in both of his knees plaintiff had degenerative bilateral arthritis that preexisted any duty-related incident. Dr. Milgram did not believe that the degree of arthritis in his right knee "disabled" plaintiff from work as a police officer and felt that if plaintiff were "so motivated[,] he could return to work as a police officer at the present time without restriction." Dr. Milgram did not find plaintiff to be disabled from a work-related injury and did not issue a certificate of disability.

Plaintiff was also examined by Dr. Jay L. Levin. His report also indicates that plaintiff had chronic and long-standing knee problems that predated the April 20, 2002, injury.

At the evidentiary hearing on June 19, 2003, plaintiff's counsel indicated that plaintiff wanted the Board to consider his pension application as a duty-related claim only and that he was not seeking a not-on-duty disability pension. During the hearing, the medical reports of the Board's examining physicians and the medical records from plaintiff's treating physicians were admitted into evidence. Plaintiff did not object to the admission of these exhibits, including Dr. Milgram's medical report.

The Board denied plaintiff's application for a line-of-duty disability pension, finding that plaintiff had a preexisting disease unrelated to the April 20, 2002, incident. In its analysis, the Board found Dr. Milgram more credible than the other physicians and afforded greater weight to his opinion. The Board also relied on Dr. Levin's report and the extensive prior medical treatment and injuries, which indicated to the Board that plaintiff's right knee condition existed prior to the work-related incident. Citing *Rizzo v. Board of Trustees of the Village of Evergreen Park Police Pension Board*, 338 Ill. App. 3d 490 (2003), which interpreted section 3—115 of the Code to require a board to issue a disability pension only if it receives certificates of an officer's disability from three practicing physicians selected by the board, the Board also denied plaintiff a disability pension because it did not receive three certificates of disability.

Plaintiff filed a complaint for administrative review. Following a hearing, the trial court affirmed the Board's decision, finding that because the doctors' medical reports were admitted as part of the administrative record without objection, plaintiff waived any objections to the sworn certification requirements of section 3—115. The trial court did not rule on the issues of whether the Board's decision was against the manifest weight of the evidence or legally erroneous. Rather, the trial court believed that it was bound to follow the decision in *Rizzo* because it was the only appellate court case in Illinois specifically deciding the section 3—115 issue. Accordingly, the court affirmed the Board's decision because the Board did not receive three certificates of disability from the examining physicians selected by the Board pursuant to section 3—115. Plaintiff timely appeals. We allowed the Hoffman Estates Police Pension Fund to file an *amicus curiae* brief in support of plaintiff.

## ANALYSIS

We turn now to the issue of whether section 3—115 of the Code mandates that a pension board deny disability benefits unless all three examining physicians selected by the board certify that the applicant is disabled. Plaintiff and *amicus curiae* do not agree with *Rizzo*'s interpretation of the statute and assert that, while a pension board must have three certificates from its selected doctors, all three certificates do not need to find the applicant disabled for the board to award a disability pension. Relying on the recent decision of *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713 (2004), plaintiff and *amicus curiae* contend that the statute requires three medical certificates addressing an applicant's *disability status*. Therefore, they assert, even though one doctor did not certify that plaintiff was disabled, plaintiff could still obtain a pension.

■ We begin by citing the statute, our standard of review, and the relevant statutory guidelines. Section 3—115 of the Code provides in relevant part:

> "Certificate of disability. A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, *** and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability." 40 ILCS 5/3—115 (West 2002).

■ In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2002)), we review the agency's decision and not the trial court's determination. *Martino v. Police Pension Board*, 331 Ill. App. 3d 975, 979 (2002). When the issue is one of law only, we review the agency's decision *de novo. Martino*, 331 Ill. App. 3d at 980. Here, review is *de novo* because this case involves a question of statutory interpretation. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). However, we give substantial weight and deference to an agency's interpretation of a statute it enforces. *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 1001 (1994).

In interpreting a statute, the court must ascertain the legislature's intent, which is found in the plain and ordinary meaning of the language used in the statute. *Land*, 202 Ill. 2d at 421. Where the statutory language is clear, the court will give that language effect without resort to other aids of construction. *Martino*, 331 Ill. App. 3d at 980.

■ In *Rizzo*, two of the three board-selected doctors who examined Rizzo submitted reports finding that Rizzo was disabled and unable to return to his job as a police officer. The third physician found that, while Rizzo was impaired, he was not disabled and could return to full, unrestricted police duties. The first two physicians submitted reports of their opinions. The third physician submitted a certificate stating that Rizzo was not disabled. Similar to the present case, in denying Rizzo a disability pension, the pension board afforded more weight to the physician's opinion that Rizzo was not disabled. The board also denied Rizzo's application for benefits pursuant to section 3—115 because the third physician certified that Rizzo was not disabled. *Rizzo*, 338 Ill. App. 3d at 491-93. On administrative review, the trial court reversed and remanded because one of the doctors finding disability had not submitted a sworn certificate as required under section 3—115. On remand, the board noted that it had received the second doctor's certificate certifying Rizzo was disabled. Rizzo filed

another complaint for review. The trial court reversed again, finding, *inter alia*, that the board improperly interpreted section 3—115.

On appeal, the First District Appellate Court held that the board properly interpreted section 3—115 because the language of the statute clearly states that a police officer cannot obtain a disability pension unless a board receives certificates from three practicing physicians, selected by the board, stating that the officer is disabled. The court noted that the board may require "other evidence" of the officer's disability, or evidence in addition to the three certified statements from the board's selected physicians that the applicant is disabled. *Rizzo*, 338 Ill. App. 3d at 494. Because one of the three physicians selected by the board to examine Rizzo did not certify that he had a disability, the board could not award Rizzo a disability pension. Therefore, the appellate court concluded that the board properly denied Rizzo's application for disability pension benefits. *Rizzo*, 338 Ill. App. 3d at 495.

In *Daily v. Board of Trustees of the Police Pension Fund*, 251 Ill. App. 3d 119 (1993), the plaintiff argued that the case should be remanded to obtain proper certification because the three physicians selected by the board to examine the plaintiff did not certify that he had a disability. The Fourth District Appellate Court held that, based on the statute, without the three physicians' certifications that the plaintiff had a disability, the board could not give the plaintiff a disability pension. *Daily*, 251 Ill. App. 3d at 126.

The plaintiffs in *Rizzo* and *Daily* both relied on *Caauwe v. Police Pension Board*, 184 Ill. App. 3d 482 (1989), for the proposition that physicians' certificates are required from three doctors to establish *either* an applicant's disability *or* the lack thereof. In *Caauwe*, the pension board denied disability benefits based on unverified and unsworn medical evidence. The plaintiff asserted that certification by three doctors that he was not disabled was mandatory to deny benefits under section 3—115, and because the doctors' reports lacked the certification of his disability, the cause should be remanded for such certification. The appellate court agreed and held that section 3—115 mandated that the board select three practicing physicians to furnish subscribed and sworn-to certifications of the applicant's disability status. Accordingly, the court reversed and remanded for the board to receive three doctors' certifications of the plaintiff's disability or lack thereof. *Caauwe*, 184 Ill. App. 3d at 484-86.

*Daily* and *Rizzo* found that, under the clear language of section 3—115, certification of an applicant's disability is required only when a board will be providing benefits, not when it is going to deny benefits. *Rizzo*, 338 Ill. App. 3d at 494-95; *Daily*, 251 Ill. App. 3d at 127. To the

extent that *Caauwe* mandates certification of an applicant's disability prior to denying benefits, both courts found it to be a contradiction of the express language of the statute and declined to follow *Caauwe.* *Rizzo,* 338 Ill. App. 3d at 495; *Daily,* 251 Ill. App. 3d at 127.

Plaintiff and *amicus curiae* rely on the recent Third District Appellate Court decision in *Coyne* to support their argument that the statute does not require three certificates of disability furnished by doctors selected by the pension board for the board to grant a disability pension. In *Coyne,* as here, the board interpreted the language of section 3—115 as requiring a unanimous declaration from its three appointed doctors that Coyne was disabled for police work, and since one doctor selected by the board opined that Coyne was not so disabled, the board summarily denied him benefits. *Coyne,* 347 Ill. App. 3d at 727.

The trial judge disagreed with the board's interpretation of section 3—115, finding the relevant statutory language to be ambiguous. The judge construed section 3—115 as requiring three medical certificates addressing Coyne's *disability status.* Because all three of the certificates met this standard, the judge concluded that the one doctor's opinion that Coyne was not disabled did not *ipso facto* disqualify Coyne from receiving pension benefits. *Coyne,* 347 Ill. App. 3d at 727-28.

The Third District Appellate Court agreed with the judge's conclusion. The focus of its analysis centered on the meaning of the qualifying label "of disability." The court found 21 nuances for the word "of," ranging from " '[c]entering on' " to " '[i]n respect to,' " which the court felt injected ambiguity into the pivotal statutory language. *Coyne,* 347 Ill. App. 3d at 728. The court believed that these various definitions could easily encompass a certificate addressing an applicant's *disability status* generally, regardless of the doctor's ultimate opinion about whether the applicant can perform police work. *Coyne,* 347 Ill. App. 3d at 728.

The court also expressed its concern over the meaning of the word "disability" because the statute says nothing about the degree of the person's incapacity. The court pointed out that in section 3—114.2 of the Code (40 ILCS 5/3—114.2 (West 1996)), the legislature recognized the varying degrees of disability. After a police officer suffers a disability, the pension board decides whether the degree of the disability is sufficient to trigger pension benefits. However, in the certificate provision of section 3—115, the legislature referenced "disability" in a general fashion without elevating the term as it did in section 3—114.2. The *Coyne* court believed that this fact, combined with the range of definitions for the word "of," resulted in ambiguity regarding

the content of the required certificates. *Coyne*, 347 Ill. App. 3d at 728-29.

The court found that to uphold the board's interpretation of section 3—115 would yield a result that would be both absurd and unconstitutional. The court asserted that, if the board's interpretation were carried to its logical conclusion, then, as a threshold matter in all cases, the three physicians required by section 3—115 would each have to certify that the applicant was disabled for police work, and the opinion of a lone minority dissenter would *ipso facto* defeat a pension claim, rendering section 3—115 a virtual summary dismissal provision. *Coyne*, 347 Ill. App. 3d at 729. The court pointed out that the evidentiary hearing would be rendered useless because, regardless of the weight of the applicant's evidence, the outcome would be predetermined by the mere existence of a disagreement between witnesses. *Coyne*, 347 Ill. App. 3d at 729. The court further pointed out that due process requires adequate notice and a hearing, but the board's interpretation precluded a hearing and effectively turned the decision over to the three physicians selected by the board rather than to the trier of fact. *Coyne*, 347 Ill. App. 3d at 729.

Justice Schmidt did not agree with the majority's rationale in *Coyne*. In his dissent, he asserted that the issue centered around what the legislature meant when it referred to the term " 'certificates of the police officer's disability.' " *Coyne*, 347 Ill. App. 3d at 730 (Schmidt, J., dissenting). He believed that the majority tortured the word "of" in a " 'Clintonesque' fashion" to make the term ambiguous. He found nothing ambiguous about the term, that it plainly refers to certificates stating that the police officer is disabled in one form or another. *Coyne*, 347 Ill. App. 3d at 731 (Schmidt, J., dissenting). Justice Schmidt pointed out that a reading of the statute under the majority's line of reasoning would render an absurd result because it would allow the board to pay a disability pension to a police officer where every certificate on file, including the officer's, indicated that he was *not* disabled. *Coyne*, 347 Ill. App. 3d at 731 (Schmidt, J., dissenting).

We agree with Justice Schmidt's dissent as well as the reasoning in *Rizzo* and *Daily*, which have construed the statute to mean what it says. We find nothing equivocal about the term "certificates of the police officer's disability." "Disability" is defined as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5—115 (West 2002). Accordingly, we see no need to certify the *degree* of an applicant's disability. Under the clear meaning of section 3—115, three physicians selected by the board must furnish certification that the applicant has a disability preventing him from performing any assigned duty or duties in the police

service. This shows the legislature's intent to require very strong proof before the board issues a disability pension.

Furthermore, contrary to the argument raised in *Coyne* and relied on by plaintiff and *amicus curiae*, we do not find that the Board's interpretation yields an absurd or unconstitutional result. If three certificates are filed establishing disability, the issue then becomes whether the disability was caused by a noncovered act or a covered act. If the Board determines that the disability was caused by a covered act, then the Board must determine the type and amount of pension the applicant receives. See 40 ILCS 5/114.1, 114.2 (West 2002). Thus, there is a rationale as to why the statute states that there may be other evidence presented on point, especially if the certificates of disability are inconsistent as to the cause of the disability.

We note that, although Coyne was not certified by three physicians selected by the board, a fourth physician, a psychiatrist who was referred by one of the selected physicians, stated that Coyne could not work as a police officer. Thus, consistent with Justice Schmidt's dissent, we see nothing in the statute to preclude an applicant from requesting a board to appoint a fourth physician to examine him in an effort to secure the necessary three certificates of disability. *Coyne*, 347 Ill. App. 3d at 732 (Schmidt, J., dissenting). Finally, we point out that the medical examination requirements in the Code are antifraud provisions, and they serve the legitimate legislative goal of ensuring the integrity of the pension fund. *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 799 (2000).

Because we find the language clear, there is no need to resort to other interpretive aids. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994) (where the enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express). The statute as clearly written should be enforced. See *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997) (if legislative intent can be ascertained from a statute's plain language, that intent must prevail without resort to other interpretive aids).

Plaintiff believes that *Rizzo* is distinguishable from his case, based on a number of other grounds. Plaintiff asserts that Rizzo sought a nonduty disability pension rather than a line-of-duty disability pension like plaintiff. We find this to be a distinction without a difference. It is not the type of disability that is pivotal to the issue under section 3—115. Rather, it is whether three physicians selected by the board have certified that the applicant has a disability.

Plaintiff further contends that in *Rizzo* all three doctors filed

certificates regarding Rizzo's disability one way or the other, while here, Dr. Milgram did not issue a certificate at all. Of importance here, as in *Rizzo*, is that only two of the three physicians certified plaintiff as disabled. Furthermore, regardless of the distinction between the facts, it is the Board's interpretation of section 3—115 and its application to the facts that is relevant to our disposition.

Both plaintiff and *amicus curiae* believe that the First District Appellate Court case of *Knight v. Village of Bartlett*, 338 Ill. App. 3d 892 (2003), contradicts its decision and analysis in *Rizzo*. *Knight* neither addresses the decision in *Rizzo* nor does it construe section 3—115. Rather, in *Knight*, two doctors selected by the board concluded that Knight was permanently disabled and unfit for duty as a police officer, and the third doctor concluded that Knight had a " 'lack of fitness for duty' " but was not psychologically disabled. *Knight*, 338 Ill. App. 3d at 900. The appellate court noted that the record indicated that the doctor used the phrase "lack of fitness for duty" to describe Knight as no longer being capable of performing the duties of a police officer, and the court concluded that "lack of fitness" was synonymous with "unfit." *Knight*, 338 Ill. App. 3d at 900. Because all three examining physicians essentially reached the same conclusion that Knight was disabled, the court reversed the board's decision denying a disability pension as against the manifest weight of the evidence. The court never addressed the issue here: whether the lack of a third certificate under section 3—115 precludes an applicant from receiving a disability pension.

Plaintiff and *amicus curiae* imply that a pension board can select a practicing physician whom the board knows will not certify an applicant as disabled, in order to deny the applicant a disability pension. We presume that persons who serve on administrative tribunals are fair and honest. See *Jackson v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 293 Ill. App. 3d 694, 699 (1997). Plaintiff did not offer any evidence of bad faith here. In the absence of any such evidence, we will not presume that the Board acted arbitrarily or in bad faith. However, if an applicant presented such proof, then a board's decision could be reversed and the cause remanded with directions to appoint a fourth physician to examine the applicant.

In summary, by the plain, express language of section 3—115, the legislature clearly requires that certificates of disability be filed by three practicing physicians selected by a board before a police officer is entitled to disability benefits. Here, since the three physicians chosen by the Board did not file certificates of disability, plaintiff is not entitled to disability benefits. Before we could rule for plaintiff, we

would have to rewrite the statute to allow the Board more flexibility with respect to the certificates of disability. However, we cannot rewrite the statute. Rather, it is our task to interpret and apply it in the manner in which it was written. *In re Estate of Schlenker*, 209 Ill. 2d 456, 466 (2004). As Justice Cardozo stated: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." F. Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947). Because we must take it as we find it, the clear, express language of the statute compels us to affirm. The language of the statute is plain and has only one meaning. Thus, the duty of interpretation does not arise. If the legislature intends the courts to interpret section 3—115 as plaintiff does, it should make the necessary statutory changes.

On administrative review, we may affirm an agency's decision on any ground appearing in the record. *Rizzo*, 338 Ill. App. 3d at 495. Because we affirm the Board's decision based on the application of section 3—115, we need not address plaintiff's other contentions that he did not receive a fair and impartial hearing because of the Board's sole reliance on Dr. Milgram's medical report and that the Board's determination was against the manifest weight of the evidence. Furthermore, because we need not address the remaining issues, we deny the Board's motion, taken with the case, to strike plaintiff's argument regarding whether he received a fair and impartial hearing.

Accordingly, we affirm the judgment of the circuit court and the Board's decision to deny plaintiff disability pension benefits.

Affirmed.

McLAREN, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent. I believe that the majority decision of *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 727-30 (2004), as set forth in section 5, "Physicians' Certificates of Disability," correctly interprets section 3—115 of the Illinois Pension Code (40 ILCS 5/3—115 (West 2002)). I fully and completely adopt the *Coyne* majority's analysis and reasoning.

Because the majority in the case *sub judice* did not address the other issues raised on appeal, I restrict my dissent to the majority's interpretation of section 3—115 of the Pension Code.