No. 2--04--0047 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

LAWRENCE WADE, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 03--MR--987

)

THE CITY OF NORTH CHICAGO POLICE )

PENSION BOARD, ) Honorable

) Raymond J. McKoski,

Defendant-Appellee.
 ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

Plaintiff, Lawrence Wade, appeals the order of the circuit court of Lake County affirming the decision of defendant, the City of North Chicago Police Pension Board (the Board), 
denying him a 
disability pension
.  The Board denied 
plaintiff
 a line-of-duty disability pension (see 40 ILCS 5/3--114.1 (West 2002)), in part because Dr. Milgram, 
one of 
the
 three doctors selected by 
the
 Board to examine 
plaintiff
, did not certify 
plaintiff
 as disabled pursuant to section 3--115 of 
the
 Illinois Pension Code (Code) (40 ILCS 5/3--115 (West 2002)).  On appeal, 
plaintiff argues: (1) the Board denied him a fair and impartial hearing because it 
relied solely on Dr. Milgram's medical report in denying him a disability pension
; (2) the Board's decision was contrary to the manifest weight of the evidence; and (3) 
the
 Board improperly interpreted section 3--115 to mandate that, before a disability pension can be granted, all three examining physicians selected by 
the
 Board must certify that 
the
 applicant is disabled
.  We find that 
the
 Board correctly interpreted section 3--115 and properly denied 
plaintiff
's application for disability pension benefits.  Accordingly, we affirm 
the
 Board's decision on this basis.

FACTS

Plaintiff was hired as a full-time police officer by the North Chicago police department in June 1982.  In 1989, plaintiff injured his right knee playing football.  Dr. Roger B. Collins examined him in 1991 and again in 1992, when his knee problems continued.  In August 1997, he twisted his right knee playing softball and underwent arthroscopic surgery.  His knee problems continued and, in 
late 2001 and early 2002, he missed work for approximately eight weeks because of them.  He returned to work in February 2002.

On April 20, 2002, 
plaintiff
 injured 
the
 same knee when he tumbled down an embankment while escorting a prisoner.  He underwent surgery on May 17, 2002.  Thereafter, on October 8, 2002, 
plaintiff
 filed an application with 
the
 Board
 for a disability pension
.  He did not specify whether he was seeking a line-of-duty (see 40 ILCS 5/3--114.1 (West 2000))
 or a not-on-duty disability pension 
under 
the
 Code (see 40 ILCS 5/3--114.2 (West 2000))
.

Pursuant to statutory mandate (see 40 ILCS 5/3--115 (West 2000)), 
three physicians selected by 
the
 Board, Dr. John Dwyer, Dr. Christopher Reger, and Dr. James W. Milgram, examined 
plaintiff
.  
Drs. Dwyer and Reger found 
plaintiff
 to be disabled from a "work-related" injury and issued certificates of disability. 
 Dr. Milgram found that 
in both 
of his knees plaintiff
 had degenerative bilateral arthritis that preexisted any duty-related incident.  Dr. Milgram did not believe that 
the
 degree of arthritis in his right knee "disabled" 
plaintiff
 from work as a police officer and felt that if 
plaintiff
 were "so motivated[,] he could return to work as a police officer at 
the
 present time without restriction."  Dr. Milgram did not find 
plaintiff
 to be disabled from a work-related injury and did not issue a certificate of disability. 

Plaintiff was also examined by Dr. Jay L. Levin.  His report also indicates that 
plaintiff
 had chronic and long-standing knee problems that predated 
the
 April 20, 2002, injury.  

At 
the
 evidentiary hearing on June 19, 2003, 
plaintiff
's counsel indicated that 
plaintiff
 wanted 
the
 Board to consider his pension application as a duty-related claim only
 and that he was not seeking a not-on-duty disability pension.  During 
the
 hearing, 
the
 medical reports of 
the
 Board's examining physicians and 
the
 medical records from 
plaintiff
's treating physicians were admitted into evidence.  Plaintiff did not object to 
the
 admission of these exhibits, including Dr. Milgram's medical report.  

The Board denied 
plaintiff
's application for a line-of-duty disability pension, finding that 
plaintiff
 had a preexisting disease 
unrelated to 
the
 April 20, 2002, incident
.  In its analysis, the Board found Dr. Milgram more credible than the other physicians and afforded greater weight to 
his opinion
.  The Board also relied on Dr. Levin's report and 
the
 extensive prior medical treatment and injuries, which indicated to 
the
 Board that 
plaintiff's right knee condition existed prior to the work-related 
incident.  Citing 
Rizzo v. Board of Trustees of The Village of Evergreen Park Police Pension Board
, 338 
Ill. App. 3d
 490 (2003), 
which interpreted 
section 3--115 of 
the
 Code to require a board to issue a disability pension only if it 
receives certificates of 
an officer's disability from three practicing physicians selected by 
the
 board, 
the
 Board also denied 
plaintiff
 a disability pension because it did not receive three certificates of disability. 

Plaintiff filed a complaint for administrative review
.  Following a hearing, 
the
 trial court affirmed 
the
 Board's decision, finding that 
because 
the
 doctors' medical reports were admitted as part of 
the
 administrative record without objection
, plaintiff
 waived any objections to 
the
 sworn certification requirements of section 3--115
.  
The trial court did not rule on 
the
 issues of whether 
the
 Board's decision 
was against 
the
 manifest weight of 
the
 evidence or legally erroneous.  Rather,
 the trial court believed that it was bound to follow 
the
 decision in 
Rizzo
 because it was 
the
 only appellate court case in Illinois specifically deciding 
the
 section 3--115 issue.  Accordingly, 
the
 court affirmed 
the
 Board's decision
 because 
the
 Board did not receive three certificates of disability from 
the
 examining physicians selected by 
the
 Board pursuant to section 3--115.  
Plaintiff timely appeals.  We allowed 
the
 Hoffman Estates Police Pension Fund to file an 
amicus
 
curiae
 brief in support of 
plaintiff
.

ANALYSIS

We turn now to 
the
 issue of whether section 3--115 of 
the
 Code mandates that a pension board deny disability benefits unless all three examining physicians selected by 
the
 board certify that 
the
 applicant is disabled. 
 Plaintiff and 
amicus
 
curiae
 do not agree with 
Rizzo
's 
interpretation of 
the
 statute and assert that, while 
a pension
 board must have three certificates from its selected doctors, all three certificates do not need to find 
the
 applicant disabled for the board to award a disability pension.  Relying on 
the
 recent decision of 
Coyne v. Milan Police Pension Board
, 347 
Ill. App. 3d
 713 (2004), plaintiff 
and 
amicus
 
curiae
 
contend that 
the
 statute requires three medical certificates addressing an applicant's 
disability
 
status
.  Therefore, 
they
 assert, even though one doctor did not certify that 
plaintiff
 was disabled, 
plaintiff
 could still obtain a pension.

We begin by citing 
the
 statute, our standard of review, and 
the
 relevant statutory guidelines.

Section 3--115 of 
the
 Code provides in relevant part:

"Certificate of disability.  A disability pension shall not be paid unless there is filed with 
the
 board certificates of 
the
 police officer's disability, subscribed and sworn to by 
the
 police officer if not under legal disability, *** and by 
the
 police surgeon (if there be one) and 3 practicing physicians selected by 
the
 board.  The board may require other evidence of disability."  40 ILCS 5/3--115 (West 2002).

In reviewing a final decision under 
the
 Administrative Review Law (735 ILCS 5/3--101 
et
 
seq.
 (West 2002)), we review 
the
 agency's decision and not 
the
 trial court's determination.  
Martino v. Police Pension Board
, 331 
Ill. App. 3d
 975, 979 (2002).  When 
the
 issue is one of law only, we review 
the
 agency's decision 
de
 
novo
.  
Martino
, 331 
Ill. App. 3d
 at 980.  Here, review is 
de
 
novo
 because this case involves a question of statutory interpretation
.  
Land v. Board of Education of the City of Chicago
, 202 
Ill. 2d
 414, 421 (2002).  However, we give substantial weight and deference to an agency's interpretation of a statute it enforces.  
Village of Franklin Park v. Illinois State Labor Relations Board
, 265 
Ill. App. 3d
 997, 1001 (1994).  

In interpreting a statute, 
the
 court must ascertain 
the
 legislature's intent, which is found in 
the
 plain and ordinary meaning of 
the
 language used in 
the
 statute.  
Land
, 202 
Ill. 2d
 at 421.  Where 
the
 statutory language is clear, 
the
 court will give that language effect without resort to other aids of construction.  
Martino
, 331 
Ill. App. 3d
 at 980.

In 
Rizzo
, 
two of 
the three board-selected doctors 
who examined 
Rizzo 
submitted reports finding that 
Rizzo 
was disabled and unable to return to his job as a police officer.  The third physician found that, while Rizzo was impaired, he was not disabled and could return to full, unrestricted police duties.  The first two physicians submitted reports of their opinions.  The third physician submitted a certificate stating that 
Rizzo was not disabled.  Similar to 
the
 present case, in denying Rizzo a disability pension, 
the
 pension board 
afforded more weight to 
the
 physician's opinion that Rizzo was not disabled.  The board also denied Rizzo's application for benefits pursuant to section 3--115
 because 
the
 third physician certified that Rizzo was not disabled.  
Rizzo
, 338 
Ill. App. 3d
 at 491-93.  On administrative review, 
the
 trial court reversed and remanded because 
one of the doctors finding disability had not submitted a sworn certificate as required under section 3--115.  On remand, the board noted that 
it had received 
the
 second doctor's certificate certifying Rizzo was disabled.  Rizzo filed another complaint for review.  The trial court reversed again, finding, 
inter
 
alia
, that 
the
 board improperly interpreted section 3--115.

On appeal, the First District Appellate Court held that 
the
 board properly interpreted section 3--115 because 
the
 language of 
the
 statute 
clearly
 states that a police officer cannot obtain a disability pension unless
 a
 board receives certificates from three practicing physicians, selected by 
the
 board,
 stating that 
the
 officer is disabled
.  The court noted that 
the
 board may require "other evidence" of 
the
 officer's disability, or evidence in addition to 
the
 three certified statements from 
the
 board's selected physicians that 
the
 applicant is disabled.  
Rizzo
, 338 
Ill. App. 3d
 at 494.  Because one of 
the
 three physicians selected by 
the
 board to examine Rizzo did not certify that he had a disability, 
the
 board could not award Rizzo a disability pension.  Therefore, 
the
 appellate court concluded that 
the
 board properly denied Rizzo's application for disability pension benefits.  
Rizzo
, 338 
Ill. App. 3d
 at 495. 

In 
Daily
 v. Board of Trustees of the Police Pension Fund
, 251 
Ill. App. 3d
 119 (1993),
 the
 
plaintiff
 argued that 
the
 case should be remanded to obtain proper certification because the three physicians selected by 
the
 board to examine 
the
 
plaintiff
 did not certify that he had a disability.  The Fourth District Appellate
 Court held that, based on 
the
 statute, without 
the
 three physicians' certifications that 
the
 
plaintiff
 had a disability, 
the
 board could not give 
the
 
plaintiff
 a disability pension.  
Daily
, 251 
Ill. App. 3d
 at 126.  

The plaintiffs in 
Rizzo
 
and 
Daily
 both relied on 
Caauwe v. Police 
Pension Board
, 184 Ill. App. 3d 482 (1989), for 
the
 proposition that 
physicians' certificates are required from three doctors to establish 
either
 an applicant's 
disability 
or
 the lack thereof.  In 
Caauwe
, 
the
 pension board denied disability benefits based on unverified and unsworn medical evidence.  The 
plaintiff
 asserted that  certification by 
three
 doctors that he was not disabled was mandatory to deny benefits under section 3--115, and because 
the
 doctors' reports lacked 
the
 certification of his disability, 
the
 cause should be remanded for such certification.  The appellate court 
agreed and held that section 3--115 mandated 
that the
 board select three practicing physicians to furnish
 subscribed and sworn-to certifications of 
the
 applicant's disability status.  
Accordingly, the court reversed and remanded for the board to receive three doctors' certifications of the plaintiff's disability or lack thereof.  
Caauwe
, 184 Ill. App. 3d at 484-86.  

Daily
 and 
Rizzo
 
found that, under the clear language of section 3--115, certification of an applicant's disability is required only when a board will be providing benefits
, not when it is going to deny benefits.  
Rizzo
, 338 
Ill. App. 3d
 at 494-95
;
 
Daily
,
 251 
Ill. App. 3d
 at 127. 
 T
o 
the
 extent that 
Caauwe
 mandates certification of an applicant's disability prior to denying benefits, 
both 
courts found it to be a contradiction of 
the
 express language of 
the
 statute
 and declined to follow 
Caauwe
.  
Rizzo
, 338 
Ill. App. 3d
 at 495
; 
Daily
, 251 
Ill. App. 3d
 at 127. 
 

Plaintiff and 
amicus
 
curiae
 rely on 
the
 recent Third District Appellate Court decision in 
Coyne
 to support their argument that 
the
 statute does not require three certificates of disability furnished by doctors selected by 
the
 pension board
 for 
the
 board to grant a disability pension
.  In 
Coyne
, as here, the
 board interpreted 
the
 language of section 3--115 as requiring a unanimous declaration from its three appointed doctors that Coyne was disabled for police work, and since 
one doctor selected by 
the
 board opined that Coyne was not so disabled, 
the
 board summarily denied him benefits.  
Coyne
, 347 
Ill. App. 3d
 at 727.
  

The trial judge disagreed with 
the
 board's interpretation of section 3--115, finding 
the
 relevant statutory language to be ambiguous.  The judge construed section 3--115 as requiring three medical certificates addressing Coyne's 
disability
 
status
.  Because all three of 
the
 certificates met this standard, 
the
 judge concluded 
that the
 one doctor's opinion that Coyne was not disabled did not 
ipso
 
facto
 disqualify Coyne from receiving pension benefits.  
Coyne
, 347 
Ill. App. 3d
 at 727-28.

The Third District Appellate Court agreed with 
the
 judge's conclusion.  The focus of its analysis centered on 
the
 meaning of 
the
 qualifying label "of disability."  The court found 21 nuances for 
the
 word "of," ranging from " '[c]entering on' " to " '[i]n respect to,' " which 
the
 court felt injected ambiguity into 
the
 pivotal statutory language.  
Coyne
, 347 
Ill. App. 3d
 at 728.  
The court believed that these various definitions could easily encompass a certificate addressing an applicant's 
disability
 
status
 generally, regardless of 
the
 doctor's ultimate opinion about whether 
the
 applicant can perform police work.  
Coyne
, 347 
Ill. App. 3d
 at 728.

The court also expressed its concern over 
the
 meaning of 
the
 word "disability" because 
the
 statute says nothing about 
the
 degree of 
the
 person's incapacity.  The court pointed out that in 
section 3--114.2 of 
the
 Code (40 ILCS 5/3--114.2 (West 1996)), 
the
 legislature recognized 
the
 varying degrees of disability.  After a 
police officer suffers a disability, 
the
 pension board decides whether 
the
 degree of 
the
 disability is sufficient to trigger pension benefits.  However, in the
 certificate provision of section 3--115, 
the
 legislature referenced "disability" in a general fashion without elevating 
the
 term as it did in section 3--114.2.  The 
Coyne
 court believed that this fact, combined with 
the
 range of definitions for 
the
 word "of," resulted in ambiguity regarding 
the
 content of 
the
 required certificates.  
Coyne
, 347 
Ill. App. 3d
 at 728-29.

The court found that to uphold 
the
 board's interpretation of section 3--115 would yield a result that would be both absurd and unconstitutional.  The court asserted that, if the board's interpretation  were carried to its logical conclusion, then, as a threshold matter in all cases, 
the
 three physicians required by section 3--115 would each have to certify that 
the
 applicant was disabled for police work, and 
the
 opinion of a lone minority dissenter would 
ipso
 
facto
 defeat a pension claim, rendering section 3--115 a virtual summary dismissal provision.  
Coyne
, 347 
Ill. App. 3d
 at 729.
  The court pointed out that 
the
 evidentiary hearing would be rendered useless because, regardless of 
the
 weight of 
the
 applicant's evidence, 
the
 outcome would be predetermined by 
the
 mere existence of a disagreement between witnesses.  
Coyne
, 347 Ill. App. 3d at 729. 
 The court further pointed out that due process requires adequate notice and a hearing, but 
the
 board's interpretation precluded a hearing and effectively turned 
the
 decision over to 
the
 three physicians selected by 
the
 board rather than to 
the
 trier of fact.  
Coyne
, 347 
Ill. App. 3d
 at 729.
 

Justice Schmidt did not agree with 
the
 majority's rationale in 
Coyne
.  In his dissent, he asserted that 
the
 issue centered around what 
the
 legislature meant when it referred to the term " 'certificates of 
the
 police officer's disability.' " 
Coyne
, 347 Ill. App. 3d at 730 (Schmidt, J., dissenting).  He believed that 
the
 majority tortured 
the
 word "of" in a " 'Clintonesque' fashion" to make 
the
 term ambiguous.  He
 found nothing ambiguous about 
the
 term, that
 it plainly refers to certificates stating that 
the
 police officer is disabled in one form or another
.  
Coyne
, 347 
Ill. App. 3d
 at 731 (Schmidt, J., dissenting). 
 Justice Schmidt pointed out 
that a reading of 
the
 statute under the majority's line of reasoning 
would render an absurd result because it would allow 
the
 board to pay a disability pension to a police officer where every certificate on file, including 
the
 officer's, indicated that he was 
not
 disabled.  
Coyne
, 347 
Ill. App. 3d
 at 731 (Schmidt, J., dissenting).

We agree with 
Justice Schmidt
's dissent as well as the
 reasoning in 
Rizzo
 and 
Daily
, 
which have construed 
the
 statute to mean what it says.  
We find nothing equivocal about 
the
 term "certificates of 
the
 police officer's disability."  "Disability" is defined 
as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in 
the
 police service."  40 ILCS 5/5--115 (West 2002)
.  Accordingly, we see no need to certify 
the
 
degree
 of 
an
 applicant's disability. 
 
Under the clear meaning of section 3--115, 
three
 physicians 
selected by 
the
 board must furnish certification that the applicant
 has a disability preventing him from performing any assigned duty or duties in 
the
 police service.  This shows 
the
 legislature's intent to require very strong proof before 
the
 board issues 
a
 disability pension.

Furthermore, contrary to the argument raised in 
Coyne
 and relied on by plaintiff and 
amicus
 
curiae
,
 we do not find that the Board's interpretation yields an absurd or unconstitutional result.  If three certificates are filed establishing disability, 
the issue then becomes whether the disability was caused by a noncovered act or a covered act.  If the Board determines that the disability was caused by a covered act, then the Board must determine the type and amount of pension the applicant receives.  See 40 ILCS 5/114.1, 114.2 (West 2002).  Thus, there is a rationale as to why the statute states that there may be other evidence presented on point, especially if the certificates of disability are inconsistent as to the cause of the disability. 

We note that, 
although Coyne was not certified by three physicians selected by the board, a fourth physician, a psychiatrist who was referred by one of the selected physicians, stated that Coyne could not work as a police officer.  Thus, consistent with Justice 
Schmidt's dissent, we see nothing in the statute to preclude an applicant from requesting a board to appoint a fourth physician to examine him in an effort to secure the necessary three certificates of disability.  
Coyne
, 347 
Ill. App. 3d
 at 732 (Schmidt, J., dissenting).  Finally, we point out that 
the
 medical examination requirements in the Code are antifraud provisions, and they serve the legitimate legislative goal of ensuring the integrity of the pension fund.
  
Trettenero v. Police Pension Fund
, 333 
Ill. App. 3d
 792, 799 (2000).

Because 
we find 
the
 language clear, there is no need to resort to other interpretive aids.  See 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 
Ill. 2d
 76, 81 (1994) (where 
the
 enactment is clear and unambiguous, a court is not at liberty to depart from 
the
 plain language and meaning of 
the
 statute by reading into it exceptions, limitations, or conditions that 
 the legislature did not express).  The statute as clearly written should be enforced.  See 
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997) (if legislative intent can be ascertained from a statute's plain language, that intent must prevail without resort to other interpretive aids)
.
  

Plaintiff believes that 
Rizzo
 is distinguishable from his case, based on a number of other grounds.  Plaintiff asserts that Rizzo sought a nonduty disability pension rather than a line-of-duty disability pension like plaintiff.  We find this to be a distinction without a difference.  It is not the type of disability that is pivotal to the issue under section 3--115.  Rather, it is whether three physicians selected by the board have certified that the applicant has a disability.  

Plaintiff further contends that in 
Rizzo
 all three doctors filed certificates regarding Rizzo's disability one way or the other, while here, Dr. Milgram did not issue a certificate at all.
  Of importance here, as in 
Rizzo
, is that only two of the three physicians certified plaintiff as disabled.  Furthermore, regardless of the distinction between the facts, it is the Board's interpretation of section 3--115 and its application to the facts that is relevant to our disposition.

Both plaintiff and 
amicus
 
curiae
 believe that the First District Appellate Court case of 
Knight v. Village of Bartlett
, 338 Ill. App. 3d 892 (2003), contradicts its decision and analysis in 
Rizzo
.  
Knight
 neither addresses the decision in 
Rizzo
 nor does it construe section 3--115.  Rather, in 
Knight
, two doctors selected by the board concluded that Knight was permanently disabled and unfit for duty as a police officer, and the third doctor concluded that Knight had a " 'lack of fitness for duty' " but was not psychologically disabled.  
Knight
, 338 Ill. App. 3d at 900.  The appellate court noted that the record indicated that the doctor used the phrase "lack of fitness for duty" to describe Knight as no longer being capable of performing the duties of a police officer, and the court concluded that "lack of fitness" was synonymous with "unfit."  
Knight
, 338 Ill. App. 3d at 900.  Because all three examining physicians essentially reached the same conclusion that Knight was disabled, the court reversed the board's decision denying a disability pension as against the manifest weight of the evidence.  The court never addressed the issue here: whether the lack of a third certificate under section 3--115 precludes an applicant from receiving a disability pension.

Plaintiff and 
amicus
 
curiae
 imply that a pension board can select a practicing physician whom the board knows will not certify an applicant as disabled, in order to deny the applicant a disability pension.  We presume that persons who serve on administrative tribunals are fair and honest.  See 
Jackson v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago
, 293 Ill. App. 3d 694, 699 (1997).  Plaintiff did not offer any evidence of bad faith here.  In the absence of any such evidence, we will not presume that the Board acted arbitrarily or in bad faith.  However, if an applicant presented such proof, then a board's decision could be reversed and the cause remanded with directions to appoint a fourth physician to examine the applicant. 

In summary, by the plain, express language of section 3--115, the legislature clearly requires that certificates of disability be filed by three practicing physicians selected by a board before a police officer is entitled to disability benefits.  Here, since the three physicians chosen by the Board did not file certificates of disability, plaintiff is not entitled to disability benefits.  Before we could rule for plaintiff, we would have to rewrite the statute to allow the Board more flexibility with respect to the certificates of disability.  However, we cannot rewrite the statute.  Rather, it is our task to interpret and apply it in the manner in which it was written.  
In re Estate of Schlenker
, 209 Ill. 2d 456, 466 (2004).  As Justice Cardozo stated: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason.  We take this statute as we find it."  F. Frankfurter, 
Some Reflections on the Reading of Statutes
, 47 Colum. L. Rev. 527 (1947).  Because we must take it as we find it, the clear, express language of the statute compels us to affirm.  The language of the statute is plain and has only one meaning.  Thus, the duty of interpretation does not arise.  If the legislature intends the courts to interpret section 3--115 as plaintiff does, it should make the necessary statutory changes.  

On administrative review, we may affirm an agency's decision on any ground appearing in the record.  
Rizzo
, 338 Ill. App. 3d at 495.  Because we affirm the Board's decision based on the application of section 3--115, we need not address plaintiff's other contentions that he did not receive a fair and impartial hearing because of the Board's sole reliance on Dr. Milgram's medical report and that the Board's determination was against the manifest weight of the evidence.  Furthermore, because we need not address the remaining issues, we deny the Board's motion, taken with the case, to strike plaintiff's argument regarding whether he received a fair and impartial hearing. 

Accordingly, we affirm the judgment of the circuit court and the Board's decision to deny plaintiff disability pension benefits.  

Affirmed.

McLAREN, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent.  I believe that the majority decision of 
Coyne v. Milan Police Pension Board
, 347 Ill. App. 3d 713, 727-30 (2004), as set forth in section 5, "Physicians' Certificates of Disability," correctly interprets section 3--115 of the Illinois Pension Code (40 ILCS 5/3--115 (West 2002)).  I fully and completely adopt the 
Coyne
 majority's analysis and reasoning.

Because the majority in the case 
sub judice
 did not address the other issues raised on appeal, I restrict my dissent to the majority's interpretation of section 3--115 of the Pension Code.