MARK MARTINO, Plaintiff-Appellee, v. POLICE PENSION BOARD OF THE CITY OF DES PLAINES, Defendant-Appellant.

First District (6th Division)    Nos. 1—01—3150, 1—01—3631 cons.

Opinion filed June 14, 2002.

Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Chicago (Mathias W. Delort and Leslye Jones-Beatty, of counsel), for appellant.

Sklodowski Puchalski & Reimer, of Chicago (Richard J. Puchalski and Richard J. Reimer, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

The Police Pension Board of the City of Des Plaines (the Board) appeals the order of the circuit court reversing the Board's order terminating the disability pension of plaintiff, Mark Martino. The Board also appeals the order of the circuit court awarding prejudgment interest on plaintiff's pension award. On appeal, the Board argues that plaintiff is no longer disabled for purposes of receiving a disability pension, as evidenced by the fact that plaintiff currently works full-time for another police department. We affirm.

The relevant facts are undisputed. Plaintiff became a police officer

in the Des Plaines police department in January 1996. A few months later, plaintiff ruptured two disks in his lower back and developed a symptom called foot drop that prevents him from running. Plaintiff applied for a not-on-duty disability pension pursuant to section 3—114.2 of the Illinois Pension Code (40 ILCS 5/3—114.2 (West 1996)).

On July 9, 1996, the Board entered an order granting plaintiff his disability pension in the amount of 50% of his salary as a police officer. In its order, the Board made the following findings:

"(2) [Plaintiff] suffers from weakness of the lower extremities related to a decompressive laminectomy of the spine, and neurogenic bladder and bowel, and a right foot drop requiring a brace and wheelchair. He is currently confined to Marianjoy Rehabilitation Hospital for rehabilitation. These conditions prevent him from performing the duties of a police officer because of the lack of ambulatory ability.

(3) Doctors Steiner, Craig and Uteg, three practicing physicians selected by the Board, have signed certificates of disability, essentially following the Board's findings in paragraph (2) above."

In December 1996, the Des Plaines police department terminated plaintiff because of his physical disability.

In December 1998, plaintiff applied for a position as a full-time police officer in Lake Villa, a municipality with a population of about 2,300. Lake Villa hired plaintiff effective June 1, 1999.

After learning that plaintiff was working full-time as a police officer for Lake Villa, the Board ordered plaintiff to show cause why his pension should not be revoked. During the show cause hearing, plaintiff introduced into evidence two physician's certificates. The first certificate was from Doctor Khan, dated October 27, 1997. In the October 1997 certificate of disability, Doctor Khan stated:

"[Plaintiff] has right foot drop as a result of spinal stenosis and herniated disk. [Plaintiff] has difficulty running and wears a brace on his right leg."

The second certificate was from Doctor McNaughton dated July 23, 1999. In the July 1999 certificate of disability, Doctor McNaughton stated:

"[Plaintiff] has right foot drop from right pernial nerve palsy that occurred as a complication of previous spinal stenosis and herniated discs. He cannot run at any speed or distance due to his right foot brace. His injury and disability [are] permanent."

The Board presented no contrary medical evidence indicating that plaintiff was not disabled.

Plaintiff testified at the hearing as follows:

"Q. Would you please describe to the members of the Board what, if any, limitations you have upon your physical well-being?

A. I have a dropped—I have to wear a brace on my right leg. When I remove the brace, my foot—I cannot flex it forward and back. It just drops and hangs. So the brace enables my leg to stay in a natural position where I'm able to walk.

* * *

Q. What physical limitations are on you because of your situation?

A. Well, obviously, I can't run long distances. I could never get out and run a mile and a half or I couldn't go for a jog. I mean I just can't run.

* * *

Q. Did you receive a position with the Lake Villa police department?

A. Yes, sir, I did.

Q. Are you currently employed there?

A. Yes, sir.

Q. And what is your capacity, the capacity of your employment?

A. I work there full-time as a patrolman.

* * *

Q. Prior to your appointment at the Lake Villa police department, did you inform them of any physical limitations that you may have?

A. Yes, sir.

Q. What, if anything, did you tell them?

A. I told Chief Visconti that I wear a brace on my leg and that I was unable to run long distances.

Q. Okay. Even with that revelation to them, did they employ you as a police officer?

A. Yes, sir, they did.

* * *

Q. What, if anything, has the Lake Villa police department indicated to you in regard to your performance to date?

A. They are—They seem to be very pleased with me.

Q. What, if any, physical limitations do you have as you perform the function of a *** member of the Lake Villa police department?

A. I still can't run.

* * *

Q. Okay. With your past experience on the Des Plaines police department, what, if any, differences can you tell this Board in regard to the exposure that you would have as a police officer between Des Plaines and Lake Villa?

A. Des Plaines has a higher, obviously a higher crime rate.

Q. And having a higher crime rate, what, if anything, would that mean to you as a police officer?

A. More experience, more danger to myself. Obviously there would be a greater chance that I would have to get out and physically chase somebody or run after somebody.

Q. Okay. As you sit here today, can you perform the full and unlimited duties of a police officer as it would relate to the Des Plaines police department?

A. No, sir.

Q. When you were employed by the Des Plaines police department, did they indicate to you that you would have to be able to run as a function of your appointment?

A. Yes, sir."

Roger Visconti, Lake Villa's police chief, testified as follows regarding plaintiff's hiring:

"Q. Why would Lake Villa be interested in hiring a police officer that couldn't run?

A. Well, when I reviewed his background and the chairman of the police committee, we looked at the education that [plaintiff] had, more than just the physical. So a lot of that I believe had to do with the police committee and the mayor hiring [plaintiff] is his education and experience ***.

* * *

Q. Your department does not care if he can run after a subject? You do not consider that part of what you hired him for?

A. I would consider that partially. I mean, the man isn't totally immobile. And with the other officers, it being a smaller department, you have more camaraderie. And I believe the officers, they all know about it and they really haven't expressed any displeasure or concern for their safety. *** [U]sually there's a sergeant and another patrolman splitting districts where the sergeant is roaming and usually is there within minutes. And also coverage from other municipalities are usually right within a few minutes response time. So that was all taken in consideration."

After hearing all the evidence, the Board revoked plaintiff's pension due to his employment as a full-time police officer for Lake Villa. On administrative review, the circuit court reversed the Board, ordered the reinstatement of plaintiff's pension, and awarded plaintiff prejudgment interest on the back pension award. The Board filed this timely appeal.

■ In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)), we review the agency's decision and not the circuit court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202 (1999). The agency's decisions on

questions of fact are entitled to deference and are reversed only if they are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Where the agency decides a mixed question of fact and law, the decision is reversed only if it is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998). Where there is no question of fact, and the issue is one of law only, the agency's decision is reviewed *de novo*. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214 (1994).

■ The Board argues that the clearly erroneous standard of review, as set forth in *City of Belvidere*, applies here. The issue in *City of Belvidere* was whether the city's refusal to engage in collective bargaining with the union over the city's decision to contract out paramedic services to a private ambulance company amounted to an unfair labor practice in violation of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 1994)). *City of Belvidere*, 181 Ill. 2d at 202. In resolving the issue, the court noted that the Illinois State Labor Relations Board (the agency) had made a factual determination that the city's decision affected wages, hours and other conditions of employment pursuant to section 7 of the Act. *City of Belvidere*, 181 Ill. 2d at 201, 205. The court further noted that the agency's finding concerned a question of law because the phrase "wages, hours and other conditions of employment" was a legal term that required interpretation. *City of Belvidere*, 181 Ill. 2d at 205. Therefore, the court held that the agency's determination was a mixed question of fact and law for which the clearly erroneous standard of review was appropriate. *City of Belvidere*, 181 Ill. 2d at 205.

By contrast, here we are not asked to review any factual findings made by the Board. Rather, the issue before us only involves a question of law, specifically, whether the Board properly terminated plaintiff's disability pension under the Illinois Pension Code. Therefore, our standard of review is *de novo*.

■ The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Augustus v. Estate of Somers*, 278 Ill. App. 3d 90, 97 (1996). In determining legislative intent, the court first should consider the statutory language. *Somers*, 278 Ill. App. 3d at 97. Where the statutory language is clear, it will be given effect without resort to other aids for construction. *Somers*, 278 Ill. App. 3d at 97.

■ Section 3—114.2 of the Illinois Pension Code entitles a police officer to a disability pension of 50% of his salary when he:

"becomes disabled as a result of any cause other than the performance of an act of duty, and [he] is found to be physically or

mentally disabled so as to render necessary his *** suspension or retirement from police service in the police department." 40 ILCS 5/3—114.2 (West 2000).

Section 3—115 of the Illinois Pension Code provides that a disability pension is not paid without a certificate of disability "subscribed and sworn to by the police officer if not under legal disability, or by a representative if the officer is under legal disability, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board." 40 ILCS 5/3—115 (West 2000). In addition, "[m]edical examination of a police officer retired for disability shall be made at least once each year prior to attainment of age 50, as verification of the *continuance* of disability for service as a police officer." (Emphasis added.) 40 ILCS 5/3—115 (West 2000).

Thus, the officer's disability pension is contingent upon his *continued* disability; if he recovers from his disability, the Board may revoke his disability pension. Section 3—116 of the Illinois Pension Code sets forth the procedure for determining whether the officer has recovered from his disability and, thus, whether his disability pension may be revoked. Section 3—116 provides in relevant part:

"A police officer whose duty is suspended because of disability may be summoned to appear before the board, and to submit to an examination to determine fitness for duty. The officer shall abide by the board's decision. If a police officer retired for disability *** *is found upon medical examination to have recovered from disability*, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position." (Emphasis added.) 40 ILCS 5/3—116 (West 2000).

Thus, just as the officer must establish his entitlement to a disability pension through "medical examination" verifying his continued disability (40 ILCS 5/3—115 (West 2000)), the officer's recovery from disability must also be shown by "medical examination" (40 ILCS 5/3—116 (West 2000)).

Here, plaintiff introduced medical evidence from Doctors Khan and McNaughton showing that plaintiff continues to suffer from his disability, *i.e.*, the right foot drop occurring as a complication of spinal stenosis and herniated disk. The Board offered no contrary medical evidence and, in fact, conceded during oral argument that plaintiff continues to suffer from his disability and that, as long as he is so disabled, he will not be rehired by the Des Plaines police department. Since plaintiff has not recovered from his disability, the Board erred in revoking his disability pension.

The parties dispute which side has the burden of proof at a disability termination hearing. The Board contends that the burden of

proof is on the officer to show that he is still disabled; the plaintiff contends that the burden of proof is on the Board to show that plaintiff is no longer disabled. We need not address this issue, since, regardless of which party has the burden of proof, it is undisputed that plaintiff is still disabled.

■ The Board next argues that plaintiff's receipt of a disability pension under the facts of this case violates public policy. While the term "public policy" lacks precise definition, it may be stated generally as a legal principle that no one may do that which has a tendency to injure the public welfare. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). The public policy of this state is reflected in its constitution, its statutes, and its judicial decisions. *O'Hara*, 127 Ill. 2d at 341.

There is no public policy preventing a disabled police officer from receiving a disability pension from the municipality that formerly employed him as a policeman. Nor is there any public policy preventing a disabled officer from securing full-time police work in another municipality that is willing to accommodate his disability. The Board argues, though, that the combination of the two events (the receipt of a disability pension from one municipality and the securing of full-time police work in a second municipality) violates public policy. We would agree *if* the officer's work in the second police department demonstrated his recovery from the disability that necessitated his termination from the first police department. Under the unique facts of this case, though, plaintiff was hired by a second, smaller police department though he continues to suffer from the same disability that prevents him from working for the first police department. As discussed earlier in this opinion, the second police department was aware of plaintiff's continued disability, but hired him anyway because of his education and experience and because other officers were available to cover for him when necessary. Since plaintiff remains disabled from working for the first police department, his receipt of a disability pension from that department's municipality works no fraud or harm on the public welfare and thus is not violative of public policy.

Further, the Board agrees that if plaintiff had found a job as, for example, a real estate agent, he would still be entitled to his disability pension because his work as a real estate agent would not be inconsistent with his claim of disability. Similarly, here, plaintiff's work as a police officer in the second police department is not inconsistent with his claim of disability, as all parties agree that plaintiff remains disabled from working for the first police department. Thus, for purposes of plaintiff's disability pension, his job as a police officer in the second police department is no different than if he

had taken a job as a real estate agent; despite working for the second police department, he is still disabled according to the requirements of the first police department, and therefore he is still entitled to his disability pension.

The Board argues that *Jagielnik v. Board of Trustees*, 271 Ill. App. 3d 869 (1995), compels a different result. In *Jagielnik*, an officer sought a disability pension for the depression he suffered as a result of a woman exposing his sexual misconduct against her. *Jagielnik*, 271 Ill. App. 3d at 871. The *Jagielnik* court held that as a matter of public policy, the police officer could not receive a disability pension because his disability was a result of the officer's intentional wrongdoing. *Jagielnik*, 271 Ill. App. 3d at 877-78. *Jagielnik* is inapposite, as plaintiff here committed no crime, perpetrated no fraud, and engaged in no intentional wrongdoing necessitating the revocation of plaintiff's disability pension.

The Board also argues that public policy would be violated if plaintiff someday received a second disability pension from Lake Villa. Plaintiff has not applied for or received a disability pension from Lake Villa, and therefore that issue is not properly before us.

■ Next, the Board argues that the trial court erred in awarding plaintiff prejudgment interest under section 2 of the Illinois Interest Act (the Interest Act) (815 ILCS 205/2 (West 2000)). Section 2 provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." 815 ILCS 205/2 (West 2000).

In *Fenton v. Board of Trustees*, 203 Ill. App. 3d 714 (1990), and *Barber v. Board of Trustees*, 256 Ill. App. 3d 814 (1993), the appellate court held that a pension agreement is an "other instrument of writing" under the Interest Act. The court reasoned that because the terms and conditions of the pension fund are written in the Illinois Pension Code, they constitute a writing creating an indebtedness similar to bonds, bills or promissory notes. *Fenton*, 203 Ill. App. 3d at 723; *Barber*, 256 Ill. App. 3d at 819. Accordingly, the court held that prejudgment interest is a proper award under the Act. *Fenton*, 203 Ill. App. 3d at 723; *Barber*, 256 Ill. App. 3d at 819.

We follow the well-reasoned opinions in *Fenton* and *Barber* and hold that the trial court did not err in awarding plaintiff prejudgment interest.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER, P.J., and BUCKLEY, J., concur.