No. 2--04--0047 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

LAWRENCE WADE, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 03--MR--987

)

THE CITY OF NORTH CHICAGO POLICE )

PENSION BOARD, ) Honorable

) Raymond J. McKoski,

Defendant-Appellee.
 ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

On December 3, 2004, this court filed an opinion in 
the
 above-entitled case.  See 353 Ill. App. 3d 852 (2004).  In that opinion, 
we addressed whether 
defendant
, 
the
 City of North Chicago Police Pension Board (the
 Board),
 wrongly denied plaintiff, Lawrence Wade,
 
a line-of-duty disability pension (see 40 ILCS 5/3--114.1 (West 2002)), in part because Dr. Milgram, one of 
the
 three doctors 
the
 Board selected
 to examine 
plaintiff
, did not certify 
plaintiff
 as disabled pursuant to section 3--115 of 
the
 
Illinois Pension Code (Pension Code) (40 ILCS 5/3--115 (West 2002)).  P
laintiff
 argued that (1) 
the
 Board denied him a fair and impartial hearing because it relied solely on Dr. Milgram's medical report in denying him a disability pension; (2) 
the
 Board's decision was contrary to 
the
 manifest weight of 
the
 evidence; and (3) 
the
 Board improperly interpreted section 3--115 to mandate that, before a disability pension can be granted, all three examining physicians selected by 
the
 Board must certify that 
the
 applicant is disabled
. 
 We found that 
the
 Board correctly interpreted section 3--115 and properly denied 
plaintiff
's application for disability pension benefits, and
 we affirmed 
the
 Board's decision on this basis only.
  Compare 
Coyne v. Milan Police Pension Board
, 347 
Ill. App. 3d
 713, 727-30 (2004), with 
Rizzo v. Board of Trustees of the Village of Evergreen Park Police Pension Fund
, 338 
Ill. App. 3d
 490, 495 (2003).  

Subsequently, plaintiff petitioned our supreme court for leave to appeal, which the supreme court denied.
 
 
Wade v. City of North Chicago Police Pension Board
, No. 99806 (May 2005).  However, it entered a supervisory order directing this court to vacate our judgment, in light of 
Turcol v. Pension Board of Trustees of Matteson Police Pension Fund
, 214 Ill. 2d 521 (2005), to resolve 
the
 issue of whether 
the
 Board's determination that 
plaintiff
 had not proven his disability was against 
the
 manifest weight of 
the
 evidence.  
Pursuant to 
the
 supreme court's supervisory order, we find that 
the
 Board's determination that 
plaintiff
 had not proven his disability was contrary to 
the
 manifest weight of 
the
 evidence.  However, we further conclude that, because
 the Board
 did not receive three certificates of plaintiff's disability, he was properly denied pension benefits under section 3--115.
 

FACTS

Plaintiff was hired as a full-time police officer by the North Chicago police department in June 1982.  In 1989, plaintiff injured his right knee playing football.  Dr. Roger B. Collins examined him in 1991 and again in 1992, when his knee problems continued.  In August 1997, he twisted his right knee playing softball and underwent arthroscopic surgery.  His knee problems continued and, in 
late 2001 and early 2002, he missed work for approximately eight weeks because of them.  He returned to work in February 2002.

On April 20, 2002, 
plaintiff
 injured 
his right 
knee when he tumbled down an embankment while escorting a prisoner.  Plaintiff
 sought immediate medical attention at Lake Forest Hospital, where he reported feeling a "pop" when he fell and experiencing pain and knee swelling.  Dr. Chris Pavlatos, an orthopedic surgeon, performed orthoscopic surgery on 
plaintiff
 on May 17, 2002, after an MRI disclosed what Dr. Pavlatos believed was a new tear in 
the
 medial and lateral meniscus.  On May 29, 2002, Dr. Pavlatos released 
plaintiff
 for "light duty work" and stated that 
plaintiff
 would "need to switch to a permanent sit down job with no running activities."  This restriction was reiterated by Dr. Pavlatos after he examined 
plaintiff
 again on August 8, 2002.  

On September 4, 2002, Dr. Mark Levin, an orthopedic surgeon, conducted an examination of 
plaintiff
.  His report indicated that 
plaintiff
 had chronic and long-standing knee problems that predated 
the
 April 20, 2002, injury.  
Dr. Levin noted that 
he examined plaintiff's 
MRI scan from April 24, 2002, which showed
 arthritic changes of 
the
 knee as well as "findings consistent with a medial meniscal tear."  After reviewing 
plaintiff
's history, radiographic studies, and medical records and performing a physical examination, Dr. Levin opined that 
plaintiff
 appeared to have tri-compartment arthritis of 
the
 right knee, which was chronic and long-standing and predated the injury from April 20, 2002.  He further opined that 
plaintiff
 did not have 
the
 ability to return to work as a patrol officer because of 
the
 underlying arthritis of 
the
 right knee.  

On September 23, 2002, 
plaintiff
 was advised that there were no permanent sedentary positions available for a police officer and his options were to retire or to apply for a disability pension.  Thereafter, on October 8, 2002, 
plaintiff
 filed an application with 
the
 Board
 for a disability pension
.  He did not specify whether he was seeking a line-of-duty (see 40 ILCS 5/3--114.1 (West 2002))
 or a not-on-duty (see 40 ILCS 5/3--114.2 (West 2002))
 disability pension 
under 
the
 Pension Code
.

Pursuant to statutory mandate (see 40 ILCS 5/3--115 (West 2002)), 
three physicians selected by 
the
 Board, Dr. John Dwyer, Dr. Christopher Reger, and Dr. James W. Milgram, examined 
plaintiff
.  
Drs. Dwyer and Reger found 
plaintiff
 to be disabled from a "work-related" injury and issued certificates of disability. 
 Dr. Milgram found that 
in both 
of his knees plaintiff
 had degenerative bilateral arthritis that preexisted any duty-related incident.  Dr. Milgram did not believe that 
the
 degree of arthritis in his right knee "disabled" 
plaintiff
 from work as a police officer and felt that if 
plaintiff
 were "so motivated[,] he could return to work as a police officer at 
the
 present time without restriction."  Dr. Milgram did not find 
plaintiff
 to be disabled from a work-related injury and did not issue a certificate of disability. 

At 
the
 evidentiary hearing on June 19, 2003, 
plaintiff
's counsel indicated that 
plaintiff
 wanted 
the
 Board to consider his pension application as a duty-related claim only
 and that he was not seeking a not-on-duty disability pension.  During 
the
 hearing, 
the
 medical reports of 
the
 Board's examining physicians and 
the
 medical records from 
plaintiff
's treating physicians were admitted into evidence.  Plaintiff did not object to 
the
 admission of these exhibits, including Dr. Milgram's medical report.  

The Board denied 
plaintiff
's application for a line-of-duty disability pension, finding that 
plaintiff
 had a preexisting disease 
unrelated to 
the
 April 20, 2002, incident
.  In its analysis, the Board found Dr. Milgram more credible than the other physicians and assigned greater weight to 
his opinion
.  The Board also relied on Dr. Levin's report and 
the
 extensive prior medical treatment and injuries, which indicated to 
the
 Board that 
plaintiff's right knee condition existed prior to the work-related 
incident.  Citing 
Rizzo
, 
which interpreted 
section 3--115 of 
the
 Pension Code to require a board to issue a disability pension only if it 
receives certificates of 
an officer's disability from three practicing physicians selected by 
the
 board, 
the
 Board denied 
plaintiff
 a disability pension because it did not receive three certificates of disability. 
 See 
Rizzo
, 338 
Ill. App. 3d
 at 495.

Plaintiff filed a complaint for administrative review
.  Following a hearing, 
the
 trial court affirmed 
the
 Board's decision, finding that 
because 
the
 doctors' medical reports were admitted as part of 
the
 administrative record without objection
, plaintiff
 waived any objections to 
the
 sworn certification requirements of section 3--115
.  
The trial court did not rule on 
the
 issues of whether 
the
 Board's decision 
was against 
the
 manifest weight of 
the
 evidence or legally erroneous.  Rather,
 the trial court believed that it was bound to follow 
the
 decision in 
Rizzo
 because it was 
the
 only appellate court case in Illinois specifically deciding 
the
 section 3--115 issue.  Accordingly, 
the
 court affirmed 
the
 Board's decision
 because 
the
 Board did not receive three certificates of disability from 
the
 examining physicians selected by 
the
 Board pursuant to section 3--115.  
Plaintiff timely appeals. 

ANALYSIS

1. Manifest Weight of 
the
 Evidence

As directed by 
the
 supreme court, we now first address 
the
 Board's determination that 
plaintiff
 had not proven his disability
.  

On appeal, we review 
the
 decision of 
the
 administrative agency, not that of 
the
 trial court.  
Stec v. Board of Trustees of the Oak Park Police Pension Fund
, 355 
Ill. App. 3d
 974, 978-79 (2005).  An administrative agency's findings of fact are deemed 
prima
 
facie
 true and correct and may be set aside only if they are against 
the
 manifest weight of 
the
 evidence.  735 ILCS 5/3--110 (West 2002); 
Daily v. Board of Trustees of the Police Pension Fund
, 251 
Ill. App. 3d
 119, 122 (1993).
  "Factual findings are against 
the
 manifest weight of 
the
 evidence only where all reasonable and unbiased persons would agree it is clearly evident 
the
 administrative agency erred and should 
have reached 
the
 opposite conclusion."  
Caterpillar, Inc. v. Illinois Commerce Comm'n
, 348 
Ill. App. 3d
 823, 828 (2004).  The mere fact that an opposite conclusion is reasonable or that 
the
 reviewing court might have ruled differently will not justify 
the
 reversal of 
the
 administrative findings.  
Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund
, 293 
Ill. App. 3d
 1070, 1076 (1997).  Moreover, "because 
the
 weight of 
the
 evidence and 
the
 credibility of 
the
 witnesses are within 
the
 province of 
the
 [agency], there need only be some competent evidence in 
the
 record to support its findings."  
Iwanski v. Streamwood Police Pension Board
, 232 
Ill. App. 3d
 180, 184 (1992).  Thus, if 
the
 record contains any evidence to support 
the
 agency's decision, it should be affirmed.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 
Ill. 2d
 76, 88 (1992).

Plaintiff claims that he was entitled to a line-of-duty disability pension pursuant to section 3--114.1 of 
the
 Pension Code (40 ILCS 5/3--114.1 (West 2002)).  In order to be entitled to a line-of-duty disability pension, 
plaintiff
 must prove in part that (1) he was disabled as a result of an injury incurred in or resulting from 
the
 performance of an act of duty; 
(2) he is physically disabled; and (3) 
the
 disabling condition renders necessary his suspension from police service.  40 ILCS 5/3--114.1 (West 2002).
 

It is undisputed that 
plaintiff
 has preexisting arthritis of his right knee.  The dispute focuses on whether 
the
 April 20, 2002, accident caused a new tear to 
plaintiff
's knee or whether 
the
 tear preexisted 
the
 accident.  Four of the five physicians who examined 
plaintiff
 concluded that plaintiff was disabled as of 
the
 date of the accident
.  Dr. Pavlatos believed that 
the
 accident caused a new tear.  Dr. Levin concurred in this conclusion.  Dr. Milgram on the other hand believed that 
any tears 
preexisted 
the
 accident, and 
the
 Board found Dr. Milgram more credible, assigning more weight to his opinion.  Thus, this case turns on whether 
the
 record contains any evidence to support Dr. Milgram's finding that 
plaintiff
 did not suffer a new tear to his knee when he fell down 
the
 embankment.  Plaintiff argues that 
the
 evidence 
reveals that Dr. Milgram's finding was baseless and unreliable and that therefore 
the
 Board erred in assigning so much weight to Dr. Milgram's opinion
.
  We agree.

Dr. Milgram's medical report submitted into evidence contains 
the
 following relevant portion:

"I have reviewed 
the
 medical records and in no area is there a history given by 
the
 patient to his treating physicians that his knee popped when he fell down 
the
 embankment with 
the
 patient [
sic
].  Therefore, this is a new history that 
the
 patient is giving to me.  The records do not show that type of an injury.  He was diagnosed by his own doctor as having bilateral arthritis of both knees and 
the
 doctor felt that he might have tears of 
the
 cartilage.  Indeed he did have tears of 
the
 cartilage, but as described in 
the
 operative note, they appear to be degenerative type of tears and chronic.  They certainly do not appear to be like a new tear that just occurred and I think that there is a significant likelihood that 
the
 tears treated by Dr. Pavlatos are pre-existing disease and not traumatic tears caused by a new injury.  I think that 
the
 patient does not have also a degree of arthritis which is disabling from work as a police officer and I feel that were he so motivated he could return to work as a police officer at 
the
 present time without restrictions."

It is clear from Dr. Milgram's report that he concluded that 
the
 accident did not cause a new tear to 
plaintiff
's knee, because 
plaintiff
 did not report 
to his doctor 
the
 symptom that his knee popped when he tumbled down 
the
 embankment.
 
 Rather, Dr. Milgram felt that 
the
 tears appeared to be of a degenerative type and chronic from preexisting disease. 
 However, 
the
 record indicates that plaintiff
 did in fact report to Dr. Pavlatos that he felt his knee pop when he fell down 
the
 embankment.  This misstatement of 
the
 evidence shows that Dr. Milgram either 
selectively disregarded, failed to recall, or never reviewed 
portions of plaintiff
's medical records.  Thus, he disregarded evidence that supports 
the
 finding that 
plaintiff
 suffered a new tear
.  We find it particularly troubling that, although he stated that he reviewed 
plaintiff
's "medical records," nowhere in his report did Dr. Milgram indicate that he specifically examined 
the
 MRI taken by Dr. Pavlatos following 
plaintiff
's accident
.  
Furthermore, Dr. Milgram based his finding that 
plaintiff is not disabled
 on 
his beliefs 
that 
plaintiff
 "does not have a degree of arthritis which is disabling from work as a police officer" and that he lacks motivation.  This "lack of motivation analysis" is vague and has no scientific basis in fact because the report does not
 consider, as 
the
 other examining physicians did, 
plaintiff's current 
symptoms regarding 
the 
use of 
his
 knee, 
i.e.
, that his knee locks occasionally, that he experiences some pain in his knee when he climbs up and down stairs, and that his knee swells and feels tender
 when he does any strenuous activities.  Dr. Milgram's opinion also fails to account for how these symptoms might affect 
plaintiff
's work as a full-duty police officer.
  Dr. Milgram was not credible, because his conclusions were inconsistent with 
the
 facts available to him.  
We find that 
the
 Board erred in assigning greater weight to Dr. Milgram's opinion, because he failed to consider or to base his opinion on relevant, material evidence that was key under the circumstances of this case.  Accordingly, 
we find that 
the
 Board's decision is against 
the
 manifest weight of 
the
 evidence
.  

Moreover, contrary to 
the
 Board's argument, we believe that escorting a prisoner constitutes being "on duty" within 
the
 ambit of section 3--114.1 of 
the
 Pension Code.  Section 5--113 of 
the
 Pension Code defines an "act of duty," in pertinent part, as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in 
the
 ordinary walks of life, imposed on a policeman by 
the
 statutes of this State or by 
the
 ordinances or police regulations of 
the
 city in which this Article is in effect or by a special assignment."  40 ILCS 5/5--113 (West 2002).  
Escorting a prisoner is not an act assumed by an ordinary citizen.  

Four out of 
five doctors 
found 
plaintiff
 to be disabled due to 
the
 injury to his knee and attributed his present condition to 
the
 April 20, 2002, incident.  Dr. Pavlatos stated that 
plaintiff
's preexisting condition was aggravated by 
the
 accident.  Dr. Levin opined that there was an aggravation from 
the
 accident that is now preventing 
plaintiff
 from returning to full-duty
 work.  The Pension Code states that 
the
 debilitating injury must have been incurred by or must have resulted from 
the
 performance of an act of duty.  
Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund
, 256 
Ill. App. 3d
 814, 818 (1993).  There is no requirement that 
the
 duty-related incident be 
the
 originating or primary cause of 
the
 injury, although a sufficient nexus between 
the
 injury and 
the
 act of 
duty must exist.  
Barber
, 256 
Ill. App. 3d
 at 818.  The reports of Drs. Pavlatos and Levin establish 
the
 nexus.  Thus, even if 
plaintiff
 did suffer from a preexisting condition, he would nevertheless be entitled to a line-of-duty disability pension because 
the
 injury that caused his inability to work occurred while he was on duty
.  

In 
Coyne
, 
the
 board denied the plaintiff a line-of-duty disability pension
 but failed to articulate its reasons.  The 
Appellate Court, Third District, remanded 
the
 cause, 
explaining that the standard of review gives 
the
 board 
the
 benefit of 
the
 doubt, but, 
with no
 articulation of 
the
 findings upon which 
the
 board based its determination, 
a reviewing 
court could not extend that benefit in an informed manner.  The appellate court concluded that "[a]n administrative agency's prerogative undoubtedly includes making credibility determinations between doctors who render competing opinions.  But when 
the
 evidence weighs heavily against a single doctor, and 
the
 agency chooses to adopt that doctor's opinion, 
the
 agency must articulate 
the
 findings underlying its choice to facilitate meaningful review." 
 
Coyne
, 347 
Ill. App. 3d
 at 724.
 
 Accordingly, 
the
 appellate court believed that 
the
 
appropriate course would be to remand 
the
 cause with instructions for 
the
 board to articulate its findings so that 
the
 appellate court could effectuate meaningful review.  
Coyne
, 347 
Ill. App. 3d
 at 724.
  In 
the
 present case, 
the
 Board did articulate its findings and we can effectuate meaningful review because it is apparent from 
the
 record that Dr. Milgram overlooked key medical evidence in formulating his opinions as to 
the
 cause of 
plaintiff
's injury and to his lack of disability.  
O
ur examination 
leads us to conclude that 
the
 Board erred in assigning so much weight to Dr. Milgram's opinion
.  Accordingly, 
the
 Board's finding that 
plaintiff
 was not entitled to a line-of-duty disability pension in accordance with section 3--114.1 of 
the
 Pension Code was
 against 
the
 manifest weight of 
the
 evidence.

2. Section 3--115

We turn now to 
the
 issue of whether section 3--115 of 
the
 Pension Code mandates that a pension board deny disability benefits unless all three examining physicians selected by 
the
 board certify that 
the
 applicant is disabled. 
 We allowed 
the
 Hoffman Estates Police Pension Fund to file an 
amicus
 
curiae
 brief in support of 
plaintiff
.

Plaintiff and 
amicus
 
curiae
 do not agree with 
Rizzo
's 
interpretation of 
the
 statute and assert that, while 
a pension
 board must have three certificates from its selected doctors, all three certificates do not need to find 
the
 applicant disabled for the board to award a disability pension.  Relying on 
the
 recent decision of 
Coyne
, 
plaintiff 
and 
amicus
 
curiae
 
contend that 
the
 statute requires three medical certificates addressing an applicant's 
disability
 
status
.  Therefore, 
they
 assert, even though one doctor did not certify that 
plaintiff
 was disabled, 
plaintiff
 could still obtain a pension.

We begin by citing 
the
 statute, our standard of review, and 
the
 relevant statutory guidelines.

Section 3--115 of 
the
 Pension Code provides in relevant part:

"Certificate of disability.  A disability pension shall not be paid unless there is filed with 
the
 board certificates of 
the
 police officer's disability, subscribed and sworn to by 
the
 police officer if not under legal disability, *** and by 
the
 police surgeon (if there be one) and 3 practicing physicians selected by 
the
 board.  The board may require other evidence of disability."  40 ILCS 5/3--115 (West 2002).

In reviewing a final decision under 
the
 Administrative Review Law (735 ILCS 5/3--101 
et
 
seq.
 (West 2002)), we review 
the
 agency's decision and not 
the
 trial court's determination.  
Martino v. Police Pension Board
, 331 
Ill. App. 3d
 975, 979 (2002).  When 
the
 issue is one of law only, we review 
the
 agency's decision 
de
 
novo
.  
Martino
, 331 
Ill. App. 3d
 at 980.  Here, review is 
de
 
novo
 because this case involves a question of statutory interpretation
.  
Land v. Board of Education of the City of Chicago
, 202 
Ill. 2d
 414, 421 (2002).  However, we give substantial weight and deference to an agency's interpretation of a statute it enforces.  
Village of Franklin Park v. Illinois State Labor Relations Board
, 265 
Ill. App. 3d
 997, 1001 (1994).  

In interpreting a statute, 
the
 court must ascertain 
the
 legislature's intent, which is found in 
the
 plain and ordinary meaning of 
the
 language used in 
the
 statute.  
Land
, 202 
Ill. 2d
 at 421.  Where 
the
 statutory language is clear, 
the
 court will give that language effect without resort to other aids of construction.  
Martino
, 331 
Ill. App. 3d
 at 980.

In 
Rizzo
, 
two of 
the three board-selected doctors 
who examined 
Rizzo 
submitted reports finding that 
Rizzo 
was disabled and unable to return to his job as a police officer.  The third physician found that, while Rizzo was impaired, he was not disabled and could return to full, unrestricted police duties.  The first two physicians submitted reports of their opinions.  The third physician submitted a certificate stating that 
Rizzo was not disabled.  Similar to 
the
 present case, in denying Rizzo a disability pension, 
the
 pension board 
afforded more weight to 
the
 physician's opinion that Rizzo was not disabled.  The board also denied Rizzo's application for benefits pursuant to section 3--115
 because 
the
 third physician certified that Rizzo was not disabled.  
Rizzo
, 338 
Ill. App. 3d
 at 491-93.  On administrative review, 
the
 trial court reversed and remanded because 
one of the doctors finding disability had not submitted a sworn certificate as required under section 3--115.  On remand, the board noted that 
it had received 
the
 second doctor's certificate certifying Rizzo was disabled.  Rizzo filed another complaint for review.  The trial court reversed again, finding, 
inter
 
alia
, that 
the
 board improperly interpreted section 3--115.

On appeal, the First District Appellate Court held that 
the
 board properly interpreted section 3--115 because 
the
 language of 
the
 statute 
clearly
 states that a police officer cannot obtain a disability pension unless
 a
 board receives certificates from three practicing physicians, selected by 
the
 board,
 stating that 
the
 officer is disabled
.  The court noted that 
the
 board may require "other evidence" of 
the
 officer's disability, or evidence in addition to 
the
 three certified statements from 
the
 board's selected physicians that 
the
 applicant is disabled.  
Rizzo
, 338 
Ill. App. 3d
 at 494.  Because one of 
the
 three physicians selected by 
the
 board to examine Rizzo did not certify that he had a disability, 
the
 board could not award Rizzo a disability pension.  Therefore, 
the
 appellate court concluded that 
the
 board properly denied Rizzo's application for disability pension benefits.  
Rizzo
, 338 
Ill. App. 3d
 at 495. 

In 
Daily
, 251 
Ill. App. 3d
 119,
 the
 
plaintiff
 argued that 
the
 case should be remanded to obtain proper certification because the three physicians selected by 
the
 board to examine 
the
 
plaintiff
 did not certify that he had a disability.  The Fourth District Appellate
 Court held that, based on 
the
 statute, without 
the
 three physicians' certifications that 
the
 
plaintiff
 had a disability, 
the
 board could not give 
the
 
plaintiff
 a disability pension.  
Daily
, 251 
Ill. App. 3d
 at 126.  

The plaintiffs in 
Rizzo
 
and 
Daily
 both relied on 
Caauwe v. Police 
Pension Board
, 184 Ill. App. 3d 482 (1989), for 
the
 proposition that 
physicians' certificates are required from three doctors to establish 
either
 an applicant's 
disability 
or
 the lack thereof.  In 
Caauwe
, 
the
 pension board denied disability benefits based on unverified and unsworn medical evidence.  The 
plaintiff
 asserted that  certification by 
three
 doctors that he was not disabled was mandatory to deny benefits under section 3--115, and because 
the
 doctors' reports lacked 
the
 certification of his disability, 
the
 cause should be remanded for such certification.  The appellate court 
agreed and held that section 3--115 mandated 
that the
 board select three practicing physicians to furnish
 subscribed and sworn-to certifications of 
the
 applicant's disability status.  
Accordingly, the court reversed and remanded for the board to receive three doctors' certifications of the plaintiff's disability or lack thereof.  
Caauwe
, 184 Ill. App. 3d at 484-86.  

Daily
 and 
Rizzo
 
found that, under the clear language of section 3--115, certification of an applicant's disability is required only when a board will be providing benefits
, not when it is going to deny benefits.  
Rizzo
, 338 
Ill. App. 3d
 at 494-95
;
 
Daily
,
 251 
Ill. App. 3d
 at 127. 
 T
o 
the
 extent that 
Caauwe
 mandates certification of an applicant's disability prior to denying benefits, 
both 
courts found it to be a contradiction of 
the
 express language of 
the
 statute
 and declined to follow 
Caauwe
.  
Rizzo
, 338 
Ill. App. 3d
 at 495
; 
Daily
, 251 
Ill. App. 3d
 at 127. 
 

Plaintiff and 
amicus
 
curiae
 rely on 
the
 recent Third District Appellate Court decision in 
Coyne
 to support their argument that 
the
 statute does not require three certificates of disability furnished by doctors selected by 
the
 pension board
 for 
the
 board to grant a disability pension
.  In 
Coyne
, as here, the
 board interpreted 
the
 language of section 3--115 as requiring a unanimous declaration from its three appointed doctors that Coyne was disabled for police work, and since 
one doctor selected by 
the
 board opined that Coyne was not so disabled, 
the
 board summarily denied him benefits.  
Coyne
, 347 
Ill. App. 3d
 at 727.
  

The trial judge disagreed with 
the
 board's interpretation of section 3--115, finding 
the
 relevant statutory language to be ambiguous.  The judge construed section 3--115 as requiring three medical certificates addressing Coyne's 
disability
 
status
.  Because all three of 
the
 certificates met this standard, 
the
 judge concluded 
that the
 one doctor's opinion that Coyne was not disabled did not 
ipso
 
facto
 disqualify Coyne from receiving pension benefits.  
Coyne
, 347 
Ill. App. 3d
 at 727-28.

The Third District Appellate Court agreed with 
the
 judge's conclusion.  The focus of its analysis centered on 
the
 meaning of 
the
 qualifying label "of disability."  The court found 21 nuances for 
the
 word "of," ranging from " '[c]entering on' " to " '[i]n respect to,' " which 
the
 court felt injected ambiguity into 
the
 pivotal statutory language.  
Coyne
, 347 
Ill. App. 3d
 at 728.  
The court believed that these various definitions could easily encompass a certificate addressing an applicant's 
disability
 
status
 generally, regardless of 
the
 doctor's ultimate opinion about whether 
the
 applicant can perform police work.  
Coyne
, 347 
Ill. App. 3d
 at 728.

The court also expressed its concern over 
the
 meaning of 
the
 word "disability" because 
the
 statute says nothing about 
the
 degree of 
the
 person's incapacity.  The court pointed out that in 
section 3--114.2 of 
the
 Pension Code (40 ILCS 5/3--114.2 (West 1996)), 
the
 legislature recognized 
the
 varying degrees of disability.  After a 
police officer suffers a disability, 
the
 pension board decides whether 
the
 degree of 
the
 disability is sufficient to trigger pension benefits.  However, in the
 certificate provision of section 3--115, 
the
 legislature referenced "disability" in a general fashion without elevating 
the
 term as it did in section 3--114.2.  The 
Coyne
 court believed that this fact, combined with 
the
 range of definitions for 
the
 word "of," resulted in ambiguity regarding 
the
 content of 
the
 required certificates.  
Coyne
, 347 
Ill. App. 3d
 at 728-29.

The court found that to uphold 
the
 board's interpretation of section 3--115 would yield a result that would be both absurd and unconstitutional.  The court asserted that, if the board's interpretation  were carried to its logical conclusion, then, as a threshold matter in all cases, 
the
 three physicians required by section 3--115 would each have to certify that 
the
 applicant was disabled for police work, and 
the
 opinion of a lone minority dissenter would 
ipso
 
facto
 defeat a pension claim, rendering section 3--115 a virtual summary dismissal provision.  
Coyne
, 347 
Ill. App. 3d
 at 729.
  The court pointed out that 
the
 evidentiary hearing would be rendered useless because, regardless of 
the
 weight of 
the
 applicant's evidence, 
the
 outcome would be predetermined by 
the
 mere existence of a disagreement between witnesses.  
Coyne
, 347 Ill. App. 3d at 729. 
 The court further pointed out that due process requires adequate notice and a hearing, but 
the
 board's interpretation precluded a hearing and effectively turned 
the
 decision over to 
the
 three physicians selected by 
the
 board rather than to 
the
 trier of fact.  
Coyne
, 347 
Ill. App. 3d
 at 729.
 

Justice Schmidt did not agree with 
the
 majority's rationale in 
Coyne
.  In his dissent, he asserted that 
the
 issue centered around what 
the
 legislature meant when it referred to the term " 'certificates of 
the
 police officer's disability.' " 
Coyne
, 347 Ill. App. 3d at 730 (Schmidt, J., dissenting).  He believed that 
the
 majority tortured 
the
 word "of" in a " 'Clintonesque' fashion" to make 
the
 term ambiguous.  He
 found nothing ambiguous about 
the
 term, that
 it plainly refers to certificates stating that 
the
 police officer is disabled in one form or another
.  
Coyne
, 347 
Ill. App. 3d
 at 731 (Schmidt, J., dissenting). 
 Justice Schmidt pointed out 
that a reading of 
the
 statute under the majority's line of reasoning 
would render an absurd result because it would allow 
the
 board to pay a disability pension to a police officer where every certificate on file, including 
the
 officer's, indicated that he was 
not
 disabled.  
Coyne
, 347 
Ill. App. 3d
 at 731 (Schmidt, J., dissenting).

We agree with 
Justice Schmidt
's dissent as well as the
 reasoning in 
Rizzo
 and 
Daily
, 
which have construed 
the
 statute to mean what it says.  
We find nothing equivocal about 
the
 term "certificates of 
the
 police officer's disability."  "Disability" is defined 
as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in 
the
 police service."  40 ILCS 5/5--115 (West 2002)
.  Accordingly, we see no need to certify 
the
 
degree
 of 
an
 applicant's disability. 
 
Under the clear meaning of section 3--115, 
three
 physicians 
selected by 
the
 board must furnish certification that the applicant
 has a disability preventing him from performing any assigned duty or duties in 
the
 police service.  This shows 
the
 legislature's intent to require very strong proof before 
the
 board issues 
a
 disability pension.

Furthermore, contrary to the argument raised in 
Coyne
 and relied on by plaintiff and 
amicus
 
curiae
,
 we do not find that the Board's interpretation yields an absurd or unconstitutional result.  If three certificates are filed establishing disability, 
the issue then becomes whether the disability was caused by a noncovered act or a covered act.  If the Board determines that the disability was caused by a covered act, then the Board must determine the type and amount of pension the applicant receives.  See 40 ILCS 5/114.1, 114.2 (West 2002).  Thus, there is a rationale as to why the statute states that there may be other evidence presented on point, especially if the certificates of disability are inconsistent as to the cause of the disability. 

We note that, 
although Coyne was not certified by three physicians selected by the board, a fourth physician, a psychiatrist who was referred by one of the selected physicians, stated that Coyne could not work as a police officer.  Thus, consistent with Justice 
Schmidt's dissent, we see nothing in the statute to preclude an applicant from requesting a board to appoint a fourth physician to examine him in an effort to secure the necessary three certificates of disability.  
Coyne
, 347 
Ill. App. 3d
 at 732 (Schmidt, J., dissenting).  Finally, we point out that 
the
 medical examination requirements in the Pension Code are antifraud provisions, and they serve the legitimate legislative goal of ensuring the integrity of the pension fund.
  
Trettenero v. Police Pension Fund
, 333 
Ill. App. 3d
 792, 799 (2000).

Because 
we find 
the
 language clear, there is no need to resort to other interpretive aids.  See 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 
Ill. 2d
 76, 81 (1994) (where 
the
 enactment is clear and unambiguous, a court is not at liberty to depart from 
the
 plain language and meaning of 
the
 statute by reading into it exceptions, limitations, or conditions that 
 the legislature did not express).  The statute as clearly written should be enforced.  See 
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997) (if legislative intent can be ascertained from a statute's plain language, that intent must prevail without resort to other interpretive aids)
.
  

Plaintiff believes that 
Rizzo
 is distinguishable from his case, based on a number of other grounds.  Plaintiff asserts that Rizzo sought a nonduty disability pension rather than a line-of-duty disability pension like plaintiff.  We find this to be a distinction without a difference.  It is not the type of disability that is pivotal to the issue under section 3--115.  Rather, it is whether three physicians selected by the board have certified that the applicant has a disability.  

Plaintiff further contends that in 
Rizzo
 all three doctors filed certificates regarding Rizzo's disability one way or the other, while here, Dr. Milgram did not issue a certificate at all.
  Of importance here, as in 
Rizzo
, is that only two of the three physicians certified plaintiff as disabled.  Furthermore, regardless of the distinction between the facts, it is the Board's interpretation of section 3--115 and its application to the facts that is relevant to our disposition.

Both plaintiff and 
amicus
 
curiae
 believe that the First District Appellate Court case of 
Knight v. Village of Bartlett
, 338 Ill. App. 3d 892 (2003), contradicts its decision and analysis in 
Rizzo
.  
Knight
 neither addresses the decision in 
Rizzo
 nor does it construe section 3--115.  Rather, in 
Knight
, two doctors selected by the board concluded that Knight was permanently disabled and unfit for duty as a police officer, and the third doctor concluded that Knight had a " 'lack of fitness for duty' " but was not psychologically disabled.  
Knight
, 338 Ill. App. 3d at 900.  The appellate court noted that the record indicated that the doctor used the phrase "lack of fitness for duty" to describe Knight as no longer being capable of performing the duties of a police officer, and the court concluded that "lack of fitness" was synonymous with "unfit."  
Knight
, 338 Ill. App. 3d at 900.  Because all three examining physicians essentially reached the same conclusion that Knight was disabled, the court reversed the board's decision denying a disability pension as against the manifest weight of the evidence.  The court never addressed the issue here: whether the lack of a third certificate under section 3--115 precludes an applicant from receiving a disability pension.

3. Fair and Impartial Hearing

Plaintiff and 
amicus
 
curiae
 imply that a pension board can select a practicing physician whom the board knows will not certify an applicant as disabled, in order to deny the applicant a disability pension.  We presume that persons who serve on administrative tribunals are fair and honest.  See 
Jackson v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago
, 293 Ill. App. 3d 694, 699 (1997).  Plaintiff did not offer any evidence of bad faith here.  In the absence of any such evidence, we will not presume that the Board acted arbitrarily or in bad faith.  However, if an applicant presented such proof, then a board's decision could be reversed and the cause remanded with directions to appoint a fourth physician to examine the applicant. 
 
We note that because we have addressed this issue, we deny the Board's motion, taken with the case, to strike plaintiff's argument regarding whether he received a fair and impartial hearing
. 

In summary, by the plain, express language of section 3--115, the legislature clearly requires that certificates of disability be filed by three practicing physicians selected by a board before a police officer is entitled to disability benefits.  Here, since the three physicians chosen by the Board did not file certificates of disability, plaintiff is not entitled to disability benefits.  Before we could rule for plaintiff, we would have to rewrite the statute to allow the Board more flexibility with respect to the certificates of disability.  However, we cannot rewrite the statute.  Rather, it is our task to interpret and apply it in the manner in which it was written.  
In re Estate of Schlenker
, 209 Ill. 2d 456, 466 (2004).  As Justice Cardozo stated: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason.  We take this statute as we find it."  F. Frankfurter, 
Some Reflections on the Reading of Statutes
, 47 Colum. L. Rev. 527 (1947).  Because we must take it as we find it, the clear, express language of the statute compels us to affirm.  The language of the statute is plain and has only one meaning.  Thus, the duty of interpretation does not arise.  If the legislature intends the courts to interpret section 3--115 as plaintiff does, it should make the necessary statutory changes.  

For 
the
 preceding reasons, 
although we find 
the
 Board's determination that plaintiff
 was not entitled to a line-of-duty disability pension in accordance with section 3--114.1 of 
the
 Pension Code
 against 
the
 manifest weight of 
the
 evidence, we affirm 
the
 Board's decision based on the application of section 3--115 
denying plaintiff disability
 pension
 
benefits because the Board did not receive three certificates of disability.  

Affirmed.

McLAREN, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent in part and concur in part.  I concur in the majority's analysis and decision that the Board's finding that plaintiff had not proven grounds for a line-of-duty disability pension in accordance with section 3--114.1 of the Illinois Pension Code (Code) (40 ILCS 5/3--114.1 (West 2002)) is against the manifest weight of the evidence.  However, I disagree with the majority's finding that section 3--115 of the Code (40 ILCS 5/3--115 (West 2002)) requires three practicing physicians, selected by the Board, to certify the police officer's disability and with its consequential finding affirming the Board's decision to deny plaintiff's application for disability benefits.

I believe that the majority decision in 
Coyne v. Milan Police Pension Board ex rel. Jones
, 347 Ill. App. 3d 713, 727-30 (2004), analyzing Section 5, "Physicians' Certificates of Disability," correctly interprets section 3--115 of the Code (40 ILCS 5/3--115 (West 2002)).  Consequently, I would reverse the Board's decision to deny plaintiff disability pension benefits because the Board did not receive three physician certificates of disability.